FIFTH DIVISION

                                                  March 31, 2000

No. 1-98-4367

KENNETH J. BOKODI,

Plaintiff-Appellant,

v.

FOSTER WHEELER ROBBINS, INC.; FOSTER WHEELER CORPORATION; FOSTER WHEELER U.S.A. CORPORATION; AND FOSTER WHEELER CONSTRUCTORS, INC.,

Defendants-Appellees.

)

)

)

)

) )

)

)

)

Appeal from the

Circuit Court of

Cook County

              

Honorable

William Maddux,

Judge Presiding.

JUSTICE QUINN delivered the opinion of the court:

This is an appeal from an order of the circuit court granting summary judgment in favor of defendants.  Plaintiff argues that the circuit court erred in granting defendants' motion for summary judgment because section 414 of the Restatement (Second) of Torts (Restatement (Second) of Torts §414
 (1965)) established a duty of care owed by general contractors to employees of subcontractors and plaintiff provided sufficient evidence showing that defendants assumed and breached that duty of care.  Defendants argue that section 414 does not apply to this case, and, even if it does, plaintiff has not shown a duty of care owed to him by defendants.  Defendants further argue that they are not liable for plaintiff's injuries because a safer hoisting device was available to plaintiff at the time of his injury.  

For the following reasons, the order of the circuit court granting summary judgment in favor of defendants is reversed and the cause is remanded for further proceedings.

Foster Wheeler Corporation (FWC) consists of many entities, divisions, and subsidiaries.  Foster Wheeler Illinois, Incorporated (FWI), a subsidiary of FWC, entered into a contract with Robbins Resource Recovery Partners, L.P., to construct a waste incineration facility in Robbins, Illinois (the Robbins project).  Under the contract, it was FWI's responsibility to perform and prosecute all of the necessary work for the Robbins project as the general contractor.  To that end, the engineering division of FWC, Foster Wheeler U.S.A. Corporation (USA Corp.), entered into a subcontract with Pangere Corporation (Pangere) for the performance of the siding and roofing work on the Robbins project.  At the time of the incident in question, plaintiff was employed by Pangere as an ironworker on the Robbins project.

Foster Wheeler Constructors, Incorporated (Constructors Inc.), is the construction management subdivision of FWC.  Constructors Inc. provided construction management and direct hire work on the Robbins project.  Constructors Inc.'s management team administered all contracts involving the construction aspects of the Robbins project, regardless of the FWC entities that signed the contracts.  Constructors Inc. also appointed a site manager for the Robbins project, Steve Kokosa.  Kokosa then designated a field superintendent, Gary Segelke, and a safety manager, Ruben Compean, for the Robbins project.

Constructors Inc.'s management team was responsible for the overall construction schedule and for subcontract coordination.  Meetings between the management team and the subcontractors' forepersons were held every week to discuss construction plans for the upcoming three weeks.  These "look-ahead" meetings were chaired by Kokosa.

At first, safety was also discussed at the "look-ahead" meetings, but eventually separate weekly meetings were necessary to discuss on-site safety matters.  Additional safety meetings were also held if there was an injury or near-injury at the site.  All of the safety meetings were chaired by Compean.  Compean also walked throughout the jobsite to ensure that safety guidelines were being followed by the various subcontractors and their employees.  For example, as he walked through the site, Compean would correct violations of safety regulations by instructing workers to put on hard hats, harnesses, or lanyards.

As a rule, any employee of FWC or its subsidiaries could stop the work of any subcontractor at any time if he witnessed a safety hazard posing an immediate threat to human life or limb.  However, if the danger was not imminent, Compean or Segelke would discuss the matter with the particular subcontractor's foreperson or safety manager and instruct him to make the situation safe.  The details of how the situation would be made safe was left to the discretion of the subcontractor.  However, if appropriate safety measures were not taken, or if defendants were not satisfied with the measures taken, defendants retained the authority to stop the work until they were satisfied that the jobsite was safe.
(footnote: 1)
On November 1, 1995, plaintiff injured his back while using a manual well wheel and handline to lift sheets of metal siding.  A well wheel is a simple pulley device, and a handline is the rope that goes around the pulley and attaches to the object to be lifted.  Plaintiff was standing in a snorkel manlift approximately 30 feet above the ground.  There was a crew member in a platform lift below plaintiff and Pangere's foreman was standing on the ground.  Pangere's foreman had set up the well wheel so that the pulley was hanging above plaintiff's head from a piece of angle wired to the basket of the manlift.  At the time of the incident, the metal sheet being lifted was approximately 12 feet long and 3 feet wide, weighing around 30 to 40 pounds.

In order to assist in lifting the metal sheet, Pangere's foreman was pulling on the handline from his position on the ground.  Pangere's foreman was having difficulty pulling the handline in the position that it was in, so he instructed plaintiff to wrap the line over the back of the basket.  With the handline in this position, plaintiff was forced to stand sideways in the basket to pull on the line.  After a few sheets of siding had been lifted and installed, plaintiff felt a knotting pain in his lower back.  Plaintiff told Pangere's foreman that he was in pain, explained what happened, and ceased the lifting activity.

Plaintiff then went to the hospital for examination.  The doctor gave plaintiff a muscle relaxant shot and prescribed Darvocet and Anaprox to him.  Plaintiff resumed work two days later but did not participate in any heavy lifting.  A week later, plaintiff saw Dr. Schlueter, who gave him two shots to relieve pain in his back.  Dr. Schlueter also referred plaintiff to Dr. Earman.  Dr. Earman told plaintiff that there was no herniation of his disc but that there were signs of the beginnings of arthritis or some other degenerative disc disease.

According to plaintiff's deposition testimony, he had seen at least two electric rope tuggers in Pangere's equipment shed at or around the time that this particular job began.  An electric rope tugger is an electric motor with a drum around it that is mounted on the ground.  A rope is run around the drum, through a raised pulley, and attached to the object to be lifted.  The object can then be lifted by pushing a button on the rope tugger.  A week before, when plaintiff began this particular siding project, plaintiff asked Pangere's foreman if the siding crew could use the electric rope tuggers for lifting the metal sheets.  Pangere's foreman told plaintiff to lift the sheets by using manual well wheels and hand lines.  Plaintiff then asked the union steward if the crew could use the electric tuggers.  The steward told him that he would look into it, but plaintiff never received a further response from the steward.

When plaintiff returned to work on November 3, 1995, he received two separate instructions on lifting safety.  First, FWC directed plaintiff to view a film presentation illustrating proper lifting techniques.  Second, Pangere distributed a memorandum suggesting that the workers spend 20 minutes performing stretching exercises prior to starting work.  In addition, either electric or pneumatic rope tuggers were being used to complete the siding project.

Plaintiff filed his initial complaint against Foster Wheeler Robbins, Incorporated, and FWC on June 27, 1996.  On March 21, 1997, plaintiff filed the first amended complaint against Foster Wheeler Robbins, Incorporated, FWC, U.S.A. Corp., and Constructors Inc., which is the complaint relevant to this appeal.

In his amended complaint, plaintiff alleged that defendants were negligent in (1) failing to provide a safe, suitable and proper hoisting device, (2) failing to make a reasonable inspection of the premises and the work being done thereon, (3) improperly operating, managing, maintaining, and controlling the premises such that plaintiff would not have been injured, (4) failing to provide plaintiff with a safe working environment, (5) failing to warn plaintiff of the dangerous conditions when defendants should have known that it was necessary to prevent injury to plaintiff, (6) failing to provide adequate safeguards to prevent injury, and (7) failing to supervise the work done on the premises.  Plaintiff claimed that, as a result of defendants' negligence, he suffered severe and permanent injuries and accrued medical expenses for the treatment of those injuries.

Defendants denied the claims in plaintiff's complaint and filed a motion for summary judgment in the circuit court.  Defendants argued that a general contractor's duty to ensure  that work is performed in a safe manner does not require that the contractor prevent a subcontractor from performing its routine duties in its own way.  Defendants asserted that a general contractor's liability based on simply hiring a subcontractor ended with the abolition of the Structural Work Act, and whether a general contractor owes a duty of care is a question of law appropriately decided on a summary judgment motion.  Defendants also claimed that the only question of fact raised by the complaint was whether an appropriate hoisting device was available to plaintiff, and by plaintiff's own admission there was a safer device available that the subcontractor simply chose not to use.

In plaintiff's response to defendants' motion for summary judgment, plaintiff argued that defendants had a duty to provide a safe working environment to the employees of an independent contractor under the common law of negligence as set forth in Section 414 of the Restatement (Second) of Torts.  Plaintiff asserted that defendants retained adequate control over the work done by the subcontractors to be held liable for a failure to  exercise that control with reasonable care.

Plaintiff claimed that the safety requirements laid out by defendants in the subcontracts were illustrative of their control over the safety of the site.  Also, plaintiff highlighted the fact that Compean walked around the site to make certain that the safety guidelines were complied with.  Finally, plaintiff pointed to the ability of any individual associated with FWC, or its subsidiary entities, to stop the work at any time due to a perception of an unsafe working environment.  In support of his argument, plaintiff submitted the transcripts of the deposition testimonies of Segelke and Compean.

On October 21, 1998, the circuit court held a hearing on the motion and granted summary judgment in favor of defendants.  A transcript of that hearing was not available to this court on appeal.  However, in its written order, the court stated that there was no just cause to delay enforcement or appeal of the order, in accordance with Supreme Court Rule 304(a) 155 Ill. 2d R. 304 (a).

The issue on appeal is whether the trial court erred in granting summary judgment in favor of defendants.  When reviewing a trial court's order of summary judgment, the only issue on appeal is whether the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  
Martinez v. Mobil Oil Corp.
, 296 Ill. App. 3d 607, 611, 694 N.E.2d 639 (1998).  In all cases involving summary judgment, we review the evidence in the record 
de novo
.  
Espinoza v. Elgin, Joliet & Eastern Ry. Co.
, 165 Ill. 2d 107, 113, 649 N.E.2d 1323 (1995).

The purpose of summary judgment is not to try an issue of fact, but to determine whether a triable issue of fact exists.  
Haberer v. Village of Sauget
, 158 Ill. App. 3d 313, 316, 511 N.E.2d 805 (1987).  Although the use of summary judgment is encouraged as an aid to expeditious disposal of a lawsuit, it is a drastic means of disposing of litigation and should only be allowed when the right of the moving party is clear and free from doubt.  
Purtill v. Hess
, 111 Ill. 2d 229, 240, 489 N.E.2d 867 (1986).  In determining whether the moving party is entitled to summary judgment, the court must construe the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent.  
In re Estate of Whittington
, 107 Ill. 2d 169, 177, 483 N.E.2d 210 (1985).  Although the court may draw inferences from the undisputed facts, where reasonable persons could draw divergent inferences from the undisputed facts, the issue should be decided by the trier of fact and the motion for summary judgment should be denied.  
Martinez
, 296 Ill. App. 3d at 611.

Defendants argue that their liability must be assessed in terms of the liability of possessors of land to their invitees.  We do not agree with this analysis.  The flaw in defendants' argument is that plaintiff's claim against them is not really premised upon the existence of some dangerous condition on the land, but upon defendants' negligence in exercising control over their independent contractor.  See 
Haberer
, 158 Ill. App. 3d at 318.

For most of the latter half of this century, liability attending construction-related injuries in Illinois was analyzed under the terms of the Structural Work Act (Act).  (740 ILCS 150/1 through 9 (West 1994)). Common law negligence principles, as expressed in  section 414 of the Restatement (Second) of Torts, coexisted with the Structural Work Act and even led to cognizable causes of action where the Act did not apply.  See, 
e.g.
, 
Weber v. Northern Illinois Gas Co.
, 10 Ill. App. 3d 625, 295 N.E.2d 41 (1973).  In 1994, the Structural Work Act was repealed  Pub. Act 89-2, 5, eff. February 14, 1995.  Surviving that repeal, however, is the common law negligence corollary to the Structural Work Act found in section 414 of the Restatement (Second) of Torts.  Section 414 was first recognized by the Illinois Supreme Court as an expression of law in Illinois in 
Larson v. Commonwealth Edison Co.
, 33 Ill. 2d 316, 325, 211 N.E.2d 247 (1965).

Section 414 of Restatement (Second) of Torts states:

"Negligence in Exercising Control Retained by Employer[.]

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."  Restatement (Second) of Torts §414, at 387 (1965).

Comment 
a
 to section 414 explains:

"If the employer of an independent contractor retains control over the operative detail of doing any part of the work, he is subject to liability for the negligence of the employees of the contractor engaged therein, under the rules of that part of the law of Agency which deals with the relation of master and servant.  The employer may, however, retain a control less than that which is necessary to subject him to liability as master.  He may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others.  Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others."  Restatement (Second) of Torts §414, Comment 
a
, at 387 (1965).

Comment 
b
 to section 414 further states:

"The rule stated in this Section is usually, though not exclusively, applicable when a principal contractor entrusts a part of the work to subcontractors, but himself or through a foreman superintends the entire job.  In such a situation, the principal contractor is subject to liability if he fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others, if he knows or by the exercise of reasonable care should know that the subcontractors' work is being so done, and has the opportunity to prevent it by exercising the power of control which he has retained in himself.  So too, he is subject to liability if he knows or should know that the subcontractors have carelessly done their work in such a way as to create a dangerous condition, and fails to exercise reasonable care either to remedy it himself or by the exercise of his control cause the subcontractor to do so."  Restatement (Second) of Torts §414, Comment 
b
, at 387-88 (1965).

However, comment 
c
 to section 414 also reads:

"In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done.  It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.  Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail.  There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."  Restatement (Second) of Torts §414, Comment 
c
, at 388 (1965).

To state a cause of action for common law negligence under section 414, the plaintiff must allege that the defendant owed a duty to the plaintiff, the defendant breached that duty, and the plaintiff suffered a compensable injury proximately caused by the defendant's breach.  
Rogers v. West Construction Co.
, 252 Ill. App. 3d 103, 105, 623 N.E.2d 799 (1993).  As a rule, the employer of an independent contractor is not liable for the acts or omissions of the independent contractor.  
Gomien v. Wear-Ever Aluminum, Inc.
, 50 Ill. 2d 19, 21, 276 N.E.2d 336 (1971).  However, an employer who retains control of any part of the work will be liable for injuries resulting from his failure to exercise his right of control with reasonable care.  
Larson v. Commonwealth Edison Co.
, 33 Ill. 2d 316, 325, 211 N.E.2d 247 (1965); 
Claudy v. City of Sycamore
, 170 Ill. App. 3d 990, 995, 524 N.E.2d 994 (1988).

In a construction negligence action, the trier of fact  must determine whether a contractor retained such control over the work of the subcontractors that the contractor was required to supervise and its failure to supervise in any of the ways ascribed in the complaint was a proximate cause of the injury.  
Weber v. Northern Illinois Gas Co.
, 10 Ill. App. 3d 625, 641, 295 N.E.2d 41 
(1973).  
However, whether the amount of control retained has triggered potential liability may be decided as a matter of law where the evidence presented is insufficient to create a factual question.  
Sobczak v. Flaska
, 302 Ill. App. 3d 916, 922, 706 N.E.2d 990 (1998).

To determine whether defendants owed a duty of care to plaintiff, we must first determine whether defendants controlled the work in such a manner that they should be held liable.

Plaintiff relies primarily on this court's rulings in 
Weber v. Northern Illinois Gas Co.
, 10 Ill. App. 3d 625, 295 N.E.2d 41 (1973), and 
Pasko v. Commonwealth Edison Co.
, 14 Ill. App. 3d 481, 302 N.E.2d 642 (1973), to show that defendants retained control sufficient to give rise to a duty under section 414.

In 
Weber
, 
the plaintiff sued the defendants alleging violations of the Structural Work Act (740 ILCS 150/1 
et seq.
 (West 1992)) and common law negligence for injuries he suffered while installing a gas pipeline owned by one of the defendants.  Under the terms of the contract between the owner-defendant and the plaintiff's employer, an independent contractor, the owner-defendant's representatives had the right to stop work until, in their opinion, proper means and methods had been adopted by the plaintiff's employer to prevent danger to the lives or persons of individuals. The employees of that defendant were also given the right to remove unsafe equipment and request that workers they designated as unskilled be removed from the site.

The owner-defendant in 
Weber
 also had a construction inspector at the site at all times.  The inspector made certain that the job was done according to the owner-defendant's specifications, and he was at the site the entire time the independent contractors were working.  The inspector also stated to the subcontractor that the equipment used when the plaintiff was injured was inadequate for the particular job being performed, but he did not take any steps to stop the work.

The circuit court granted summary judgment in favor of the defendants as to both counts
.  The appeal of the Structural Work Act count was dismissed; however, the summary judgment order was reversed as to the negligence count as it related to the owner-

defendant.  This court found that the owner-defendant retained the power to forbid the work being done in a manner dangerous to others and that it failed to prevent the subcontractor from doing the details of the work in a dangerous manner even when it knew the work was being so done.  
Weber
, 10 Ill. App. 3d at 639.  This court further stated that the defendant had more power than to merely make suggestions or recommendations, and the subcontractor was not entirely free to do the work in his own way.  
Weber
, 10 Ill. App. 3d at 639.

As a result, this court stated that it could not conclude, as a matter of law, that the independent contractor had exclusive control over the work, which would have relieved the defendant of liability to the plaintiff.  
Weber
, 10 Ill. App. 3d at 637.  The court found instead that a fact finder could determine that the defendant retained the requisite amount of control to give rise to a duty under section 414 of the Restatement and that the amount of control retained by the defendant was a question of fact to be left to the trier of fact.  
Weber
, 10 Ill. App. 3d at 637-39.

Similarly, in 
Pasko v. Commonwealth Edison Co.
, 14 Ill. App. 3d 481, 302 N.E.2d 642 (1973), this court affirmed a jury verdict in favor of the plaintiff in a negligence action.  The plaintiff sought damages for injuries suffered while installing electric poles for his employer, an independent contractor, in accordance with its contract with the defendant.

The contract provided that the defendant had the right to stop work if it felt that unsafe procedures were being followed and could prevent the work from being resumed until, in its opinion, proper means and methods were employed to avoid injury or property damage.  The defendant also retained the right to remove unsafe equipment from the jobsite, to approve the installation of all plankings and barricades, and to approve the color of paint applied to all barricades. 

The jury rejected the defendant's arguments that it did not retain sufficient control over the safety aspects of the project to give rise to a duty to provide a safe working environment for the plaintiff.  This court affirmed the jury's verdict on appeal, citing 
Weber
 and stating that the jury's finding of liability under section 414 of the Restatement could be justified if the jury had first determined that the defendant had retained enough control over the project to be bound to use reasonable care in exercising that control.  
Pasko
, 14 Ill. App. 3d at 489.

In the present case, defendants argue that the facts before this court are more similar to those in 
Fris v. Personal Products Co.
, 255 Ill. App. 3d 916, 627 N.E.2d 1265 (
1994), and 
Rangel v. Brookhaven Constructors, Inc.
, 307 Ill. App. 3d 835, 719 N.E.2d 174 (1999), which found that the defendants did not exercise sufficient control to give rise to a duty of care under section 414.  However, these two cases can be factually distinguished from this case.

In 
Fris
, the plaintiff was an employee of an independent contractor.  Plaintiff injured himself while trying to pick up a pallet.  The defendant retained the right to inspect the work done and order changes to the specifications and plans.  The defendant also retained the right to make sure safety precautions were observed and that the work was done in a safe manner.  However, the subcontractor was free to move, weld, lift and place objects as it saw fit in order to meet the specifications and plans established by the defendant.

The jury returned a verdict in favor of the plaintiff, and the trial court denied the defendant's request for judgment 
notwithstanding the verdict.  The appellate court reversed the circuit court's judgment based on its determination that the evidence did not show that the defendant retained any control over the incidental aspects of the independent contractor's work.  
Fris
, 255 Ill. App. 3d at 924-25.  The court stated that although the defendant retained the right to require that work be done in a safe manner, "this general authority cannot be viewed as creating such a right of supervision as to have prevented [the independent contractor] from doing routine work in its own way."  
Fris
, 255 Ill. App. 3d at 924.

However, we distinguish 
Fris
 from the present case on its facts.  In 
Fris
, the defendant's project engineer testified that under the contract, the independent contractors were responsible for their own means, methods, and techniques of completing their work.  The independent contractor was responsible for the safety of its project.  While the project engineer testified that the defendant retained authority to stop work which was unsafe, there was no mention that the defendant actively inspected the site for compliance with any safety guidelines.  There is also no evidence that the defendant in 
Fris
 had a specific safety program in effect.  In the present case, defendants established their own safety program and appointed an individual whose sole function was to seek out safety hazards.  Thus, defendants in the present case took a much more active role in controlling and supervising the safety standards at the jobsite than the defendants in 
Fris
.

The second case relied upon by defendants, 
Rangel v. Brookhaven Constructors, Inc.
, 307 Ill. App. 3d 835, 719 N.E.2d 174  (1999), is also distinguishable from the present case on its facts.  In 
Rangel
, the plaintiff was a drywall hanger for one of the defendant's subcontractors.  
The plaintiff was injured when a brace on a scaffold gave way, causing him to fall 7 to 10 feet to the concrete below.  The subcontract agreement between the defendant and the subcontractor stated that the defendant's supervision and control over the work to be done by the subcontractor did not in any way limit the obligations of the subcontractor.

This court in 
Rangel
 held that the defendant's reservation of the right of supervision over the subcontractor was a general right, not a retention of control over the incidental aspects of the subcontractor's work.  
Rangel
, 307 Ill. App. 3d at 839.  The court pointed to the fact that there was no evidence to suggest that the subcontractor was not entirely free to perform the work in its own way.  
Rangel
, 307 Ill. App. 3d at 839.  The court also noted that there was no evidence that the defendant knew or had notice of the hazardous method employed.  
Rangel
, 307 Ill. App. 3d at 839.

Unlike 
Rangel
, the evidence in the present case is sufficient to show that defendants retained control over such incidental aspects of the subcontractor's work.  Section GC5.3 of the subcontractor's agreement states:

"Subcontractor shall do all Work hereunder with and according to his own equipment, personnel, means and methods (defined as 'Resources'), which shall belong to and be and remain in the exclusive charge and control of Subcontractor, and, unless otherwise stated in this Subcontract, shall not be subject to any control or supervision by Contractor, except as to the results of said Work; and with respect to such resources, it is expressly understood that Contractor does not hereby hire or rent the use of the same or assume the liability for the use or method of use thereof."

However, despite defendants' statement in the agreement that the subcontractors were to be in control of their work, defendants went to great lengths to control the safety standards at the work site.  Section GC36 of the subcontractor's agreement provided 29 different safety measures and procedures required by defendants.  Under the subcontract, the subcontractors were required to conduct weekly safety training meetings for their employees, which defendants had the right to monitor.  Subcontractors' employees were instructed by defendants about the appropriate personal protective equipment and work clothes to be worn, as well as given guidelines for personal grooming.  Subcontractors were told when and where to erect barricades and warning lights, and were required to notify adjacent landowners when the subcontractors' work would affect them.  In addition, the subcontractors were required to achieve consistency with and participate in defendants' site safety program and rules, with no recourse for time devoted to participating in defendants' site safety program.

Above and beyond the subcontract itself, defendants' actions indicated a substantial level of involvement in the incidental activities at the work site.  Defendants employed a full-time safety manager to conduct weekly safety meetings and to walk around the work site to check for compliance with defendants' safety standards.  The safety manager and all of defendants' employees were empowered to halt the work of the subcontractors if they witnessed safety violations.  Defendants could also shut down the work of the subcontractors until a safety breach was alleviated to defendants' satisfaction.  Also, unlike 
Rangel
, due to the fact that defendants were constantly monitoring this work site, defendants should have known of the hoisting method employed in this case.  Defendants were also authorized to instruct the subcontractors' employees to comply with safety standards in even the most minute details.

This court 
has determined:

" 'The power to forbid work from being done in a manner likely to be dangerous to himself or others is given as an illustration of the type of power retained by an employer which could subject him to liability.' " 
Ryan v. Mobil Oil Corp.
, 157 Ill. App. 3d 1069, 1078, 510 N.E.2d 1162 (1987), quoting 
Pasko v. Commonwealth Edison Co.
, 14 Ill. App. 3d 481, 488, 302 N.E.2d 642 (1973).

We believe that the facts of this case are analogous to those in 
Weber
 and 
Pasko
.  Therefore, in looking at the foregoing case law and the language of comment 
b
 to section 414 of the Restatement, holding a principal contractor liable "if he fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others, if he knows or by the exercise of reasonable care should know that the subcontractors' work is being so done, and has the opportunity to prevent it by exercising the power of control which he has retained in himself" (Restatement (Second) of Torts § 414, Comment 
b
 at 387-(1965)), we hold that defendants retained control over the operative details of the work, superintended the entire job, and retained a right of supervision such that the subcontractors were not entirely free to do their work in their own  way.

We find that the evidence presented in the instant case is insufficient to create a factual question and we hold that defendants were in charge of and retained control of the work at the construction site, imposing a duty of care under common law negligence.  We also reject defendants' argument that they are not liable for plaintiff's injuries because a safer hoisting device was available to plaintiff at the time of his injury.  This court has held that a plaintiff's claim under section 414 of the Restatement will not

"automatically be defeated because he knew of the danger causing his injury, or because the danger was so obvious that he should have discovered it, or because he failed to protect himself against the danger.  These matters will not, in other words, eliminate an owner's duty to an employee of its independent contractor.  Rather, they are relevant only on a question of whether the owner's obligation to pay damages should be reduced based on principles of comparative negligence."  
Haberer
, 158 Ill. App. 3d at 319.

Based on the foregoing, we reverse the trial court's order granting summary judgment in favor of defendants, and we remand the cause for further proceedings consistent with this opinion.

Reversed and remanded.

THEIS, P.J., and GREIMAN, J., concur.

FOOTNOTES
1: It is unclear from the record on appeal what role defendant Foster Wheeler Robbins, Incorporated, played in the Robbins project.  References were made to a corporation so named in questions presented in deposition transcripts, but no statements were made as to its responsibilities or assignments in this project.  Also, no explanations as to its specific role were set out in the first amended complaint or the briefs of the parties on appeal.