# Illinois Official Reports

## Appellate Court

***Fonseca v. Clark Construction Group, LLC,***
**2014 IL App (1st) 130308**

| | |
|---|---|
| Appellate Court Caption | FORTINO FONSECA, Plaintiff-Appellant, v. CLARK CONSTRUCTION GROUP, LLC, Defendant-Appellee (Maron Electric Company, Defendant). |
| District & No. | First District, First Division<br>Docket No. 1-13-0308 |
| Filed | April 28, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for defendant, the general contractor on a construction project, where plaintiff, an employee of the drywall subcontractor, tripped on a pipe while carrying a sheet of drywall and filed an action alleging that defendant failed to remove debris from the area where plaintiff was working and to properly supervise the work being done, since defendant never exercised general/supervisory authority, did not alter or directly supervise the work of the electrical subcontractor responsible for the debris on which plaintiff tripped, and did not retain sufficient control over the electrical contractor's work to warrant imposing a duty on defendant under section 414 of the Restatement (Second) of Torts to exercise reasonable care. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-1404; the Hon. Kathy M. Flanagan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Keith L. Young, of Law Offices of Keith L. Young, of Chicago, for appellant.

Johnson & Bell, Ltd., of Chicago (Joseph F. Spitzzeri, Garrett L. Boehm, Jr., and Katie E. Gorrie, of counsel), for appellee.

Panel

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Connors and Justice Delort concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal arises from an October 15, 2012 order which granted the motion for summary judgment filed by defendant-appellee Clark Construction Group, LLC (Clark Construction), and denied the motion for summary judgment filed by defendant Maron Electric Company (Maron Electric). Maron Electric is not participating in this appeal. On appeal, plaintiff-appellant Fortino Fonseca (Fonseca) argues that the trial court erred in granting summary judgment in favor of Clark Construction because there was sufficient evidence to establish that Clark Construction owed Fonseca a duty to exercise reasonable care. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                        BACKGROUND

¶ 3    In March 2008, Clark Construction was the general contractor working on the construction of an office building located at 300 N. LaSalle Street, Chicago, Illinois (the building). The building was owned by 300 LaSalle LLC, a Delaware limited liability company (300 LaSalle). Fonseca was employed as a contractor for RG Construction, a drywall subcontractor of Clark Construction. Maron Electric was also a subcontractor of Clark Construction and was in charge of the electrical work for the building. The contracts between the owner of the building, the general contractor, and the subcontractors contained several provisions that are at issue in this case.

¶ 4    300 LaSalle and Clark Construction executed a contract for the construction of the building (the Clark contract). Section 3.3.1 of the Clark contract stated:

"[Clark Construction] shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under Contract Documents or otherwise required by good construction practice or by any applicable code. Contractor understands and acknowledges that although certain construction means, methods, techniques, sequences and procedures necessary for the completion of the Project may be

- 2 -

referenced in the Contract Documents, it shall remain responsible for and have control over the construction means, methods, and techniques necessary to comply with such sequences and procedures."

¶ 5 Section 3.3.2 of the Clark contract stated:

"[Clark Construction] shall be responsible to [300 LaSalle] for acts and omissions of [Clark Construction's] employees, suppliers, consultants, Subcontractors and Sub-Subcontractors and their respective agents and employees, and all other persons or entities performing portions of the Work."

¶ 6 Section 10.2.1 of the Clark contract stated:

"[Clark Construction] shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work, including safety of all persons and property during performance of the Work. This requirement shall apply continuously throughout the course of the Work and shall not be limited by normal working hours. [Clark Construction] shall take all reasonable precautions and safety measures, including those listed in the Contract Documents (which are presumably deemed reasonable), for the safety of, and shall provide reasonable protection to prevent damage, injury or loss to:

1. All employees on, and persons performing, the Work and all other persons who may be affected thereby."

¶ 7 Additionally, Clark Construction and Maron Electric executed a subcontract for Maron Electric to perform the electrical work for the building (the Maron subcontract). Paragraph 1a of the Maron subcontract stated:

"[Maron Electric] shall perform all work and shall furnish all supervision, labor, materials, plant, scaffolding, tools, equipment, supplies and all other things necessary for the construction and completion of the work described in Exhibit B and work incidental thereto, in strict accordance and full compliance with the terms of the Contract Documents (which are hereby incorporated by reference) and this Subcontract and to the satisfaction of [Clark Construction] and [300 LaSalle]."

¶ 8 Paragraph 6a of the Maron subcontract stated:

"[Maron Electric] hereby assumes the entire responsibility and liability for all work, supervision, labor and materials provided hereunder, whether or not erected in place, and for all plant, scaffolding, tools, equipment, supplies and other things provided by [Maron Electric] until final acceptance of work by [300 LaSalle] as defined by the Contract Documents."

¶ 9 Paragraph 18 of the Maron subcontract stated "[Maron Electric] shall clean its work and remove all debris resulting from its work in a manner that will not impede either the progress of the Project or of other trades." Paragraph 22 of the Maron subcontract stated:

"a. [Maron Electric] shall be bound by, and, at its own cost, shall comply with all Federal, state and local laws, codes, ordinances and regulations applicable to this Subcontract and the performance of the work hereunder whether by reason of general law or by reason of provisions in the Contract Documents.

b. Specifically and without limitation, [Maron Electric] and all employees and agents thereof shall comply with the applicable requirements issued pursuant to the Occupational Safety and Health Act of 1970, as amended, all other applicable health

- 3 -

and safety laws and regulations, and all laws and regulations applicable to the hiring of aliens."

¶ 10 Exhibit D of the Maron subcontract stated that the contract included daily clean-up of all trash and debris in its work area. The Maron subcontract stated that Clark Construction had the right to reject the work of Maron Electric if it did not conform with the requirements of the Maron subcontract. Additionally, an 18-page safety and health manual was incorporated into the Maron subcontract. The safety manual stated that "[a]ll subcontracting personnel are required to follow all of [Clark Construction's] safety and health policies, in addition to their own company program." Further, the safety manual established that Clark Construction had a safety manager for the project, and that Maron Electric was required to attend a safety orientation conducted by Clark Construction's safety manager prior to starting work. The safety manual required that Maron conduct weekly "toolbox talks" with its workers using forms provided by Clark Construction that were to be returned to Clark Construction's safety manager. The safety manual stated that Clark Construction would chair monthly safety meetings and weekly toolbox talks that Maron Electric's foreman was required to attend.

¶ 11 On a day in late March 2008, Fonseca was framing and installing drywall with his brother between the second and fourth floors of the building. Fonseca spent the day carrying drywall sheets and working on areas between the second and fourth floors of the building. At one point, Fonseca was carrying a large sheet of drywall weighing approximately 100 pounds down a hallway in order to hand the sheet to his brother. Before reaching his brother, Fonseca tripped on an electrical pipe that was on the floor of the hallway. The drywall broke into two pieces, and one piece fell on top of Fonseca.

¶ 12 After Fonseca fell, he called for his brother and laid on the ground for about three minutes. Fonseca and his brother walked down to the basement to tell RG Construction foreman Robert Alarid (Alarid) about Fonseca's accident. As a result of his fall, Fonseca suffered multiple injuries to his neck and back. Fonseca had surgery on his back and his right shoulder to treat his injuries.

¶ 13 On February 1, 2010, Fonseca filed a complaint for negligence in the circuit court of Cook County against Clark Construction and Kelso-Burnett Company (Kelso-Burnett). On March 26, 2010, Fonseca filed a first amended complaint for negligence against Clark Construction, Continental Electrical Construction Company (Continental Electrical), Maron Electric, and Gibson Electric and Technology Solutions (Gibson Electric). On July 28, 2010, Kelso-Burnett filed a motion to dismiss. On that same day, the trial court granted Kelso-Burnett's motion to dismiss. On August 12, 2010, Continental Electrical filed a motion to dismiss. On September 7, 2010, Gibson Electric filed a motion to dismiss. On October 18, 2010, Continental Electrical and Gibson Electric were dismissed without prejudice. On November 1, 2010, Fonseca filed a second amended complaint for negligence against Clark Construction and Maron Electric. On April 15, 2011, Fonseca filed a motion for leave to file a third amended complaint, which was granted by the trial court. On that same day, Fonseca filed his third amended complaint for negligence against Clark Construction and Maron Electric. Specifically, Fonseca alleged that Maron Electric failed to remove its construction debris from the area where he was working, causing him to fall, and that Clark Construction failed to properly supervise the work being done on the construction site.

¶ 14 On April 21, 2011, the deposition of Amy Olmsted (Olmsted), senior safety manager of Clark Construction, was taken. Olmsted stated that she was the safety manager for the

construction of the building. It was her job to walk around the building and make sure everyone was working safely. Olmsted stated that Clark Construction had the authority to stop work if it was not being done correctly. Olmsted did not recall stopping the work of any subcontractors during the construction of the building.

¶ 15   Also on April 21, 2011, the deposition of Robert Borello (Borello), senior superintendent of Clark Construction, was taken. Borello was the superintendent during the construction of the building. Borello stated that if he saw that a subcontractor was working in an unsafe manner, he had the authority to stop the work. If Borello saw debris in the work area of a subcontractor, it was his responsibility to tell the subcontractor to clean it up. Further, Borello stated that it was Maron Electric's responsibility to inspect its own work, and no one from Clark Construction ever inspected Maron Electric's work. Borello stated that it was Maron Electric's responsibility to clean up debris and no one from Clark Construction ever cleaned up debris left by any subcontractors.

¶ 16   On May 3, 2011, the deposition of David O'Malley (O'Malley), safety director for Maron Electric, was taken. O'Malley stated that it was Clark Construction's job to coordinate Maron Electric's work with other subcontractors. Also, O'Malley stated that Maron Electric workers were expected to take care of housekeeping in their work areas. O'Malley acknowledged that during construction, there was conduit scrap from Maron Electric's work. O'Malley stated that the conduit scrap might represent a tripping or slipping hazard.

¶ 17   On March 27, 2012, Joe Mahler (Mahler), general foreman of Maron Electric, executed an affidavit. In his affidavit, Mahler stated that he supervised and gave direction to Maron Electric employees. Mahler stated that pursuant to the Maron subcontract, Maron Electric agreed to perform housekeeping duties in the Maron Electric work areas. In his capacity as general foreman, Mahler enforced the housekeeping rules. Mahler was responsible for and confirmed that housekeeping procedures were followed. Mahler stated that he was never informed that a worker from RG Construction became injured after stepping onto electrical piping. On May 23, 2012, Mahler's deposition was taken. Mahler stated that it was his job to direct and supervise Maron Electric foremen and electricians. He stated that it was Maron Electric's responsibility to clean up debris, which it did daily. He did not receive any complaints from Clark Construction about housekeeping. Mahler stated that Clark Construction never stopped any work that was done by Maron Electric. He stated that it was up to Maron Electric to control the means and methods of its own work during construction of the building. Further, Mahler stated that Clark Construction did not provide Maron Electric with any tools. Also, Mahler held weekly toolbox talks for his employees to talk about safety.

¶ 18   On April 3, 2012, Clark Construction and Maron Electric filed separate motions for summary judgment. Clark Construction argued that it did not owe a duty to Fonseca because it "did not retain any actual control, including supervisory control, over the work performed by Maron Electric." On October 15, 2012, the trial court entered a memorandum opinion and order which denied Maron Electric's motion for summary judgment and granted Clark Construction's motion for summary judgment. In its order, the trial court found that Clark Construction did not owe Fonseca a duty under section 414 of the Restatement (Second) of Torts (1965) because Clark Construction did not control the means and methods or operative details of Maron Electric's work. The trial court found that Clark Construction retained nothing more than "the general rights attributable to general contractors." Further, the court reasoned that "the existence of a safety program, safety manual, or safety director does not

constitute retained control *per se*." Thus, the trial court granted Clark Construction's motion for summary judgment. Additionally, the trial court found that pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), there was no just reason to delay the enforcement or appeal of its order.

¶ 19    On November 5, 2012, Fonseca filed a timely notice of appeal. Therefore, this court has jurisdiction to consider Fonseca's arguments on appeal pursuant to Rule 304(a) and Illinois Supreme Court Rule 303 (eff. May 30, 2008).

¶ 20                                           ANALYSIS

¶ 21    On appeal, we determine whether the trial court erred in granting summary judgment in favor of Clark Construction.

¶ 22    Fonseca argues that the trial court erred in granting summary judgment in favor of Clark Construction because there is a genuine issue of material fact as to whether Clark Construction owed Fonseca a duty under section 414 of the Restatement (Second) of Torts. Specifically, Fonseca argues that Clark Construction owed him a duty to exercise reasonable care because the language of the Clark contract states that Clark Construction was solely responsible for, and had control over, the means, methods, techniques and procedures of the construction of the building and Maron Electric's work. Also, Fonseca contends that Clark Construction owed him a duty because it retained significant control over the safety aspects of the construction. Fonseca points out that Clark Construction had a full-time safety manager and that there was a safety manual with extensive safety procedures that Maron Electric had to follow. Fonseca emphasizes that Borello and Olmsted had the authority to stop Maron Electric's work if they thought the work was being done in an unsafe manner. Fonseca asserts that Clark Construction went to great lengths to control the safety standards of the work site. Therefore, Fonseca contends that there are genuine issues of material fact regarding Clark Construction's duty and liability. Accordingly, Fonseca argues that the trial court erred in granting Clark Construction's motion for summary judgment.

¶ 23    In response, Clark Construction argues that the trial court did not err in granting its motion for summary judgment. Specifically, Clark Construction argues that it did not owe Fonseca a duty under section 414 of the Restatement (Second) of Torts because it did not retain any actual control, or general supervisory control, over Maron Electric's work. Clark Construction asserts that the language in the Maron subcontract shows that Maron Electric agreed to assume the entire responsibility for all work, supervision, labor and materials during construction of the building and that Maron Electric was responsible to clean up all of its debris. Thus, Clark Construction was not responsible for the debris that caused Fonseca's injury. Also, Clark Construction argues that Illinois law states that even where general contractors are given general supervisory and controlling powers over a jobsite, liability will not be found if the general contractor does not take an active role in ensuring safety and does not retain control over the incidental aspects of a subcontractor's work. Clark Construction contends that the depositions and affidavits of the parties show that Clark Construction did not control the operative details of Maron Electric's work. Clark Construction points out that it never inspected Maron Electric's work and never ordered Maron Electric to stop working. Further, Clark Construction argues that it only promoted general safety efforts as opposed to controlling the safety procedures of Maron Electric. Clark Construction highlights that Maron Electric held its own toolbox talks and Clark Construction had no input regarding the topics

covered in those meetings. Clark Construction asserts that contrary to Fonseca's argument, it did not go to great lengths to control the safety standards of the worksite. Thus, Clark Construction contends that it did not owe Fonseca a duty under section 414 of the Restatement (Second) of Torts. Accordingly, Clark Construction argues that the trial court did not err in granting its motion for summary judgment.

¶ 24    Summary judgment is appropriate when the pleadings, admissions, and affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008); *Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196, 201 (2008). We review the trial court's summary judgment ruling under the *de novo* standard of review. *Ioerger*, 232 Ill. 2d at 201.

¶ 25    In this case, Fonseca's lawsuit against Clark Construction is based on common-law negligence. "In any action for negligence, the plaintiff must present sufficient evidence to establish the defendant owed a duty to the plaintiff." *Rangel v. Brookhaven Constructors, Inc.*, 307 Ill. App. 3d 835, 837 (1999). The court decides as a matter of law whether a duty exists, and if no duty exists then there can be no recovery. *Id*. at 837-38.

¶ 26    Generally, it is the rule in Illinois that a party who entrusts an independent contractor will not be held vicariously liable for tortuous acts or omissions committed by the independent contractor. *Madden v. F.H. Paschen/S.N. Nielson, Inc.*, 395 Ill. App. 3d 362, 381 (2009). "This is because one who hires an independent contractor usually does not supervise the details of the contractor's work and is therefore not in a good position to prevent the contractor from acting negligently." *Id*. However, if sufficient control is exercised over the independent contractor, then that rule no longer applies and section 414 of the Restatement (Second) of Torts is triggered. *Id*. at 382. Illinois has adopted the approach of section 414 of the Restatement (Second) of Torts. *Rangel*, 307 Ill. App. 3d at 838. Section 414 of the Restatement (Second) of Torts states as follows:

> "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts § 414 (1965).

¶ 27    Comments *a* and *c* of section 414 provide us with more guidance:

> "*a*. If the employer of an independent contractor retains control over the operative detail of doing any part of the work, he is subject to liability for the negligence of the employees of the contractor engaged therein, under the rules of that part of the law of Agency which deals with the relation of master and servant. The employer may, however, retain a control less than that which is necessary to subject him to liability as master. He may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others.
> ***

*c*. In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." Restatement (Second) of Torts § 414 cmts. a, c (1965).

¶ 28    In construction negligence cases where there is a contract between a general contractor and an independent contractor that employed the plaintiff, it is the general rule that summary judgment in favor of the general contractor is inappropriate when the general contractor agreed to retain control over safety at the construction site or where the general contractor goes to great lengths to control safety at the construction site. *Joyce v. Mastri*, 371 Ill. App. 3d 64, 74 (2007). "However, summary judgment in favor of the general contractor is appropriate where an independent contractor is contractually responsible for jobsite safety and the defendant general contractor takes no active role in ensuring safety [citation], or where [the] general contractor reserves the general right of supervision over the independent contractor but does not retain control over the incidental aspects of the independent contractor's work [citation]." *Id*. A general contractor's rights to stop work and order changes are general rights of supervision and not a retention of control over the incidental aspects of the work. *Calderon v. Residential Homes of America, Inc.*, 381 Ill. App. 3d 333, 346 (2008). "The mere existence of a safety program, safety manual, or safety director is insufficient to trigger [section 414]." *Madden*, 395 Ill. App. 3d at 382. Even if a general contractor retains the right to inspect work, orders changes to the plans, and ensures that safety precautions are observed and the work is done safely, the general contractor will not be held liable unless the evidence shows that the general contractor retained control over the incidental aspects of the independent contractor's work. *Rangel*, 307 Ill. App. 3d at 839.

¶ 29    We agree with Clark Construction's argument. In this case, Clark Construction did not retain control over the incidental aspects of Maron Electric's work. Although the Clark contract provided Clark Construction with general supervisory authority, Clark Construction did not exercise this authority and in no way altered or directly supervised the work of Maron Electric. In making this determination, we find the language of the Maron subcontract, the affidavit of Mahler, and the depositions of the various employees involved in the construction project, to be particularly important. The Maron subcontract stated that Maron Electric assumed the entire responsibility and liability for work, supervision, labor and materials used in conjunction with the construction of the building. Further, the Maron subcontract stated that Maron Electric was responsible for cleaning and removing all debris from its work area and that Maron Electric was bound by all laws, codes, ordinances and regulations applicable to the Maron subcontract through general law or the Clark contract. In Olmsted's deposition, she stated that she would walk around the jobsite to make sure that people were working safely, but she did not recall ever stopping anyone's work. In Borello's deposition, he stated that it was Maron Electric's responsibility to inspect its own work and clean up its own debris, and that he never inspected Maron Electric's work. In Mahler's deposition and affidavit, he stated that: he directed and supervised Maron Electric employees; Maron Electric was responsible for

cleaning up its own debris; Clark Construction never stopped Maron Electric's work; and Maron Electric controlled *the means and methods of its own work during construction of the building*. These facts show that Clark Construction did not have control over the way that Maron Electric conducted its work. Thus, Clark Construction did not *retain* control over Maron Electric's work.

¶ 30    We note that Clark Construction had a safety manager, held weekly safety meetings, and had a safety manual that Maron Electric was directed to follow. However, we also note that Maron Electric conducted its own weekly toolbox talks that had no input or direction from Clark Construction. In support of his argument, Fonseca cites two cases which held that a general contractor owed a duty to a plaintiff employee of a subcontractor because the general contractor retained sufficient control over the subcontractors' work to trigger section 414 of the Restatement (Second) of Torts. See *Wilkerson v. Paul H. Schwendener, Inc.*, 379 Ill. App. 3d 491 (2008); *Bokodi v. Foster Wheeler Robbins, Inc.*, 312 Ill. App. 3d 1051 (2000). However, we find those cases distinguishable from the instant case because the general contractors in those cases retained significantly more control over the subcontractors' work. For example, in *Wilkerson*, the general contractor required the subcontractor to provide a " 'site specific safety plan' " for the general contractor's approval; and the general contractor sent the subcontractor a scathing letter warning the subcontractor that its work would be stopped if it did not comply with the safety procedures. *Wilkerson*, 379 Ill. App. 3d at 494-95. In *Bokodi*, this court found that the general contractor went to "great lengths" to control the safety standards of the work site. *Bokodi*, 312 Ill. App. 3d at 1063. The court noted that the subcontractors were instructed by the general contractor about appropriate personal equipment and clothing, personal grooming, and when and where to erect barricades and warning lights. *Id*. Additionally, the subcontractors were required to achieve consistency and participate in the general contractor's site safety program and rules. *Id*.

¶ 31    In this case, Clark Construction did not go to such great lengths to control Maron Electric's work. Maron Electric was free to complete its work as it pleased and was responsible for cleaning and monitoring its own work area in a safe condition. Moreover, as discussed earlier, "[t]he mere existence of a safety program, safety manual, or safety director is insufficient to trigger [section 414]." *Madden*, 395 Ill. App. 3d at 382. Accordingly, based on the language of the Maron subcontract, the depositions of the various employees involved in the project and their testimony regarding the actual practice at the construction site, as well as the affidavit and deposition of Mahler; we find that Clark Construction did not retain sufficient control over Maron Electric's work to trigger section 414 of the Restatement (Second) of Torts. Thus, we hold that as a matter of law, Clark Construction did not owe Fonseca a duty to exercise reasonable care, and the trial court did not err in granting summary judgment in favor of Clark Construction.

¶ 32    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 33    Affirmed.