FOURTH DIVISION

June 19, 2003

No. 1-02-1615

ROBERT ROSS )

)   Appeal from

Plaintiff-Appellant,
 ) the Circuit Court

) of Cook County.

)

v. ) No. 98 L 4031

)

DAE JULIE, INC., )     Honorable

) David G. Lichtenstein,

Defendant-Appellee. ) Judge Presiding.

 

PRESIDING JUSTICE THEIS delivered the opinion of the court:

Plaintiff Robert Ross brought a negligence action against defendant Dae Julie, Inc. (Dae Julie), following a construction site accident in which Ross was injured.  The trial court granted summary judgment to Dae Julie, finding that it did not owe Ross a duty of care.  Ross appeals, contending that at least a question of material fact remains whether section 414 of the Restatement (Second) of Torts established a duty of care in this case.  For the following reasons, we affirm the judgment of the circuit court.

BACKGROUND

In 1996, Dae Julie was in the process of expanding and remodeling its candy manufacturing plant.  As part of the construction project, Dae Julie hired Hill Mechanical Group (Hill Mechanical) to perform mechanical, sheet metal, and pipefitting work on the project.  Other contractors were hired for other aspects of the project.  No formal written contract was ever entered into between the parties.  Farhad Behrouz was the manager of engineering at the Dae Julie plant, and served as the project manager for the entire expansion.  His role was to make sure that the project was completed on time, that the specifications were met, to answer questions should they arise, and make decisions regarding field conditions that may require additional time or funds.  

Behrouz had the authority on behalf of Dae Julie to stop Hill Mechanical's work if he found it to be unsafe, but he also stated that 99% of his time was spent in other areas of the project.  "My main concern was mostly the concentration on the kitchen which was a more critical area."  Prior to retaining Hill Mechanical for the job, Behrouz inquired and was told that the company conducted their own safety meetings.  Hill Mechanical had weekly safety meetings or "toolbox talks" conducted by its foreman.  About one month before the accident, Behrouz had a conversation with Hill Mechanical regarding the need for fall protection, and was told that they would handle it.  He relied upon the expertise of Hill Mechanical to do their job correctly.  Hill Mechanical was responsible for the safety of its employees on the job site.      

Ross was hired as an employee of Hill Mechanical to perform pipefitting work for the expansion.  He had 38 years of experience and was eventually promoted to foreman of the project.  As foreman, he was responsible for the safety of himself and his workers on the job site.  Hill Mechanical provided him will all of the tools and equipment to do his work, including the ladder he was using at the time of his fall, and any fall protection.  No Dae Julie personnel told him or his co-workers how to do his job or what type of equipment to use in facilitating their work.  Ross testified that he only saw Behrouz around the plant about twice a week and only dealt with him to turn in his time sheets.     

Towards the end of the project, Ross and his co-worker, Brian Mandziara ,were working on the mezzanine level of the premises about 10 feet above ground-level.  They were completing the pipe installation and welding for a compressor and refrigerated dryer supplied by Dae Julie.  There was a two-pipe railing that fenced off the mezzanine level.  Ross was aware that the railing had been removed sometime prior to his injury to accommodate the placement of the compressor and dryer on the mezzanine level, and was aware that it had not yet been replaced.  Behrouz could not recollect whether he had seen Ross and his co-worker working on the mezzanine at any time before the accident, but was aware that the railing had been taken down from the mezzanine.  

On the day of the accident, Ross was welding a pipe about 6 to 8 feet above the floor of the mezzanine level.  To access the area needed to be welded, Ross stated that he needed to use a six-foot wooden step ladder supplied by Hill Mechanical to accomplish his task.  He chose to use a ladder instead of an enclosed lift which was also available to him.  He was not using fall protection.  According to Ross, he placed the ladder six to twelve inches from the edge of the mezzanine level with the ladder feet parallel to the wall.  He took a step with his left leg onto the ladder and fell along with the ladder to the floor below from the mezzanine level.  He does not know what caused him to fall off the mezzanine.    

Thereafter, Ross brought suit against Dae Julie alleging that it "had a duty to exercise reasonable care in the scheduling and ordering of the construction work to be done," and that Dae Julie breached that duty by failing to maintain a safe work environment.  Dae Julie

moved for summary judgment, arguing that it owed no duty to Ross pursuant to section 414 of the Restatement (Second) of Torts because it did not control the manner in which Ross's work was being done.  The trial court granted the motion and Ross timely appealed.

ANALYSIS

Ross contends on appeal that the trial court erred in granting summary judgment because sufficient evidence was presented to establish that Dae Julie owed a duty of care to Ross pursuant to section 414 of the Restatement (Second) of Torts.  Restatement (Second) of Torts §414 (1965).  Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c)(West 2002); 
Sollami v. Eaton
, 201 Ill. 2d 1, 6, 772 N.E.2d 215, 218 (2002).  While a plaintiff need not prove his case during a summary judgment proceeding, he must present some evidence to support each element of his cause of action.  
Finch v. Illinois Community College Board
, 315 Ill. App. 3d 831, 835, 734 N.E.2d 106, 109 (2001).  Our review of the circuit court's judgment is 
de
 
novo
.  
Sollami
, 201 Ill. 2d at 7, 772 N.E.2d at 218.    

The central issue before us concerns the element of duty.  In any action for common-law negligence, the plaintiff must plead and prove that defendant owed a duty of care to the plaintiff.  
Happel v. Wal-Mart Stores, Inc.
, 199 Ill.2d 179, 186, 766 N.E.2d 1118, 1123 (2002).  Whether a duty exists is a question of law to be determined by the court.  
Happel
, 199 Ill. 2d at 186, 766 N.E.2d at 1123.  

Here, Ross initially argues on appeal that a duty of care arose when Dae Julie removed the pipe railing from the mezzanine, had the power and ability to replace the railing, and failed to replace it, thereby creating an unreasonably dangerous condition on the premises.  An owner of land may subject himself to liability to invitees based upon a condition on the land under certain circumstances.  Section 343 of the Restatement (Second) of Torts provides:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger."  Restatement (Second) of Torts §343 (1965).

However, after examining the allegations of the complaint and Ross's theory of the case, it is evident that he never alleged that a duty arose based upon the creation of a dangerous condition on the land.  Rather, his theory was that a duty arose based upon the control retained by Dae Julie as the general contractor on the project and its failure to supervise the safety of the workplace.  His brief and argument are made solely in the context of section 414 of the Restatement (Second) of Torts.  Therefore, we will focus our analysis, in the context of this construction-related injury, as to whether the general contractor owes a duty of care to the employee of an independent contractor under section 414 of the Restatement (Second) of Torts.  
Kotecki v. Walsh Construction Co.
, 333 Ill. App. 3d 583, 587, 776 N.E.2d 774, 777 (2002).  

Section 414 provides as follows:

"One who entrusts work to an independent contractor, but who 
retains the control
 of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to 
exercise his control
 with reasonable care."  (Emphasis added) Restatement (Second) of Torts §414 (1965).

Thus, in determining whether Dae Julie owed Ross a duty of care, we must consider whether Dae Julie retained the requisite control over the work, not whether failure to replace the railing created an unreasonably dangerous condition on the premises.  

The "retained control" concept is, as Ross acknowledges, essentially the nature of this case and is explained in comment 
c
 to section 414.  Comment 
c
 provides as follows:

"In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done.  It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.  Such a general right is usually reserved to employers, but it 
does not mean that the contractor is controlled as to his methods of work, or as to operative detail.  There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."  
(Emphasis added). 
 
Restatement (Second) of Torts §414, Comment 
c
, at 388 (1965).

As an initial matter, we note that Ross merely alleged in his complaint that Dae Julie controlled the assignment and scheduling of work and "had a duty to exercise reasonable care in the scheduling and ordering of the construction work to be done." This conclusory statement is insufficient to establish that Dae Julie controlled the manner and method of work to be done by Hill employees.   

With regard to the evidence presented at the summary judgment stage, Ross admitted that, as acting foreman, he was responsible for the safety of himself and his workers, and that Hill Mechanical implemented weekly safety meetings or "toolbox" talks conducted by the foreman.  In addition, Paul Schmitz, the safety coordinator for Hill Mechanical stated that he was responsible for monitoring the safety of Hill employees.  There was no evidence presented to suggest that Dae Julie conducted safety meetings or attended the meetings held by Hill employees.  

Behrouz stated that he had the authority to stop work if he believed it to be unsafe, and discussed fall protection with Hill.  However, such a general right to ensure that safety precautions are observed and that work is done in a safe manner will not impose liability on the general contractor unless the evidence shows that the general contractor retained control over the means and methods of the independent contractor's work.  
Rangel v. Brookhaven Constructors, Inc.
, 307 Ill. App. 3d 835, 838, 719 N.E.2d 174, 178 (1999); 
Fris v. Personal Products Co
., 255 Ill. App. 3d 916, 924, 627 N.E.2d 1265, 1270 (1994).  

Here, there is no evidence presented to suggest that Hill employees were not entirely free to perform their work in their own way.  Ross admitted in his deposition that nobody from Dae Julie instructed him on the operative details of his work or supplied him with tools necessary to do his work assignments.  The only contact he had with Behrouz, the project manager for Dae Julie, was to sign his time sheets or engage in social conversation.  Behrouz stated that he spent 99% of his time concentrating on other more critical aspects of the project and referred to Hill as the "general contractor" for the pipefitting work that needed to be done.  Behrouz relied on Hill employees' expertise in their field to do their job.  He did not meet with Hill employees on a daily basis.  Furthermore, with regard to supervision, the testimony of Behrouz was as follows:

Q: And what did you do with respect to your daily inspections of the work being done on the balcony by Robert Ross and his helper?

A: Okay. You mean as far as supervision?

Q: Right.

A: That was not my responsibility.

Accordingly, it is evident that, as a matter of law, Dae Julie only retained a general right of supervision over the entire project and Hill Mechanical controlled the means and methods by which its specific work was to be completed for purposes of section 414, including safety precautions.  Such a general right of supervision by Dae Julie is insufficient to establish a duty of care in this context.    

Ross cites to several cases, notably, 
Pasko v. Commonwealth Edison Company
, 14 Ill. App. 3d 481, 302 N.E.2d 642 (1973); 
Ryan v. Mobil Oil Corp.
, 157 Ill. App. 3d 1069, 510 N.E.2d 1162 (1987); 
Sobczak v. Flaska
, 302 Ill. App. 3d 916, 706 N.E.2d 990 (1998); and 
Bokodi v. Foster Wheeler Robbins, Inc.
, 312 Ill. App. 3d 1051, 728 N.E.2d 726 (2000)
, in support of his proposition that Dae Julie owed him a duty of care by virtue of its control over the work site.  We find these cases to be factually distinguishable because the defendants in those cases were found to have extensive involvement with the operative details of the work performed.  
  

In 
Pasko
, the defendant retained far greater control over safety issues.  Not only did the defendant retain the right to stop work if unsafe procedures were being followed, it could prevent the work from being resumed until proper means and methods were employed to avoid injury or property damage, it could order equipment be removed from the jobsite if it believed it to be unsafe or inadequate, and reserved the right to approve the color of paint applied to safety barricades, to order safety planking substituted for barricades and to approve the installation of all safety barricades and planking.  
Pasko
, 14 Ill. App. 3d at 489, 302 N.E.2d at 648.

In 
Sobczak
, the plaintiff was working under the direct supervision of the property owner, and the owner "told [the plaintiff] what to do and how to do it or passed such information through others."  
Sobczak
, 302 Ill. App. 3d at 923, 706 N.E.2d at 996.    In 
Bokodi
, the written contract provided 29 different safety measures and procedures that were required by the defendants.  The defendants retained control of safety at the worksite by specifically designating a person whose sole function was to seek out safety hazards, by establishing their own weekly safety meetings conducted by defendants' safety manager, and by constantly monitoring the worksite.  In addition, the plaintiff received specific instruction on proper lifting safety during a film presentation presented by defendants.  
Bokodi
, 312 Ill. App. 3d at 1063, 728 N.E.2d at 735. 

In 
Ryan
, the court held that retaining the authority to stop unsafe work was sufficient to subject the general contractor to liability.  In doing so, the court relied upon a limited passage from 
Pasko
 which provides that "the power to forbid work from being done in a manner likely to be dangerous to himself or others" is the type of power retained by an employer which could subject him to liability.  
Ryan
, 157 Ill. App. 3d at 1073, 510 N.E.2d at 1168, quoting 
Pasko
, 14 Ill. App. 3d at 488, 302 N.E.2d at 648.  This passage, taken out of context, merely provides a narrow interpretation of comment 
a
 of section 414 of the Restatement (Second) of Torts without further consideration of comment 
c
 which specifically defines the "retained control" concept.  In accordance with comment 
c
, as stated previously, in order for the rule stated in section 414 to apply, the employer must have retained control over the manner and method in which the work is done.  "There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."  Restatement (Second) of Torts 414, comment 
c
, at 388.  

In light of 
Ryan
's cursory examination of comment 
a
 and failure to consider comment 
c
, we choose to follow the more recent line of cases, which incorporate comment 
c
 of section 414 into the duty analysis.  Those cases have found that, 

"even where the employer or general contractor retains the right to inspect the work done, orders changes to the specifications and plans, and ensures that safety precautions are observed and the work is done in a safe manner, no liability will be imposed on the employer or general contractor unless the evidence shows the employer or general contractor retained control over the 'incidental aspects' of the independent contractor's work." 

Bieruta v. Klein Creek Corp.
, 331 Ill. App. 3d 269, 278, 770 N.E.2d 1175, 1182 (2002); 
Fris
, 255 Ill. App. 3d at 924-25, 627 N.E.2d at 1270; 
Kotecki
, 333 Ill. App. 3d at 588-89, 776 N.E.2d at 778; 
Rangel
, 307 Ill. App. 3d at 839, 719 N.E.2d 174; and 
Connaghan v. Caplice
, 325 Ill. App. 3d 245, 250, 757 N.E.2d 971, 975 (2001).  In 
Connaghan
, the court defined "incidental aspects" to mean that the plaintiff was not free to do the required work in his own way; rather, the defendant controlled both the ends and means of the work.  325 Ill. App. 3d at 250, 757 N.E.2d at 975.  

For example, in 
Kotecki
, 333 Ill. App. 3d at 588, 776 N.E.2d at 778, the court held that defendant did not control the incidental aspects of the plaintiff's work sufficiently to establish a duty because the undisputed facts showed that the subcontractor was free to do the work without specific direction from the general contractor.  In 
Fris
, 255 Ill. App. 3d at 924, 627 N.E.2d at 1270, while the evidence showed that the defendant retained the right to inspect, order changes, and ensure safety precautions were observed, the court held that such a general authority could not create such a right of supervision as to have prevented the independent contractor from doing its work in its own way.  See also 
Bieruta
, 331 Ill. App. 3d at 278, 770 N.E.2d at 1182 (general contractor not liable where subcontractor was responsible for the methods, means and techniques used in performing work. ); 
Rangel
, 307 Ill. App. 3d at 839, 719 N.E.2d at 177 (general contractor only retained a general right of supervision where subcontractor directed employee as to methods of his work and supplied him with equipment on which he worked.); 
Hutchcraft v. Independent Mechanical Industries, Inc.
, 312 Ill. App. 3d 351, 359, 726 N.E.2d 1171, 1177 (2000) (merely having the ability to inspect work and enforce safety regulations did not constitute sufficient control to establish a duty.)  

Similarly, here, the undisputed facts reveal that Hill was free to perform its work in its own way, and that Dae Julie never directed the "operative details" of the work performed by Ross.  Hill supplied the equipment used to perform Ross's pipefitting and welding responsibilities, and as foreman with 38 years of experience, Ross was in charge of the safety of himself and his co-workers.  Accordingly, under the facts of this case, Dae Julie did not retain the requisite control of the work or safety issues for purposes of section 414.  Thus, no common law duty arose and Dae Julie is entitled to judgment as a matter of law.

In light of our holding, we further reject Ross's contention that "a jury could find that Dae Julie breached its duty of care" by failing to observe Occupational Safety and Health Administration (OSHA) regulations and American National Standards Institute (ANSI) standards when it removed the pipe railing from the mezzanine and failed to replace it, thereby creating an unreasonably dangerous working condition.  "While alleged violations of codes which do not contain language creating a statutory duty may be evidence of failure to exercise reasonable care, the violations do not create a duty where none otherwise exists."  
Miller v. Archer-Daniels-Midland Co.
, 261 Ill. App. 3d 872, 879, 634 N.E.2d 1108, 1113 (1994), citing 
Feldscher v. E & B, Inc
., 95 Ill. 2d 360, 370, 447 N.E.2d 1331, 1336 (1983).  Neither a violation of OSHA regulations or a violation of ANSI standards creates a statutory duty.  See 29 U.S.C. 666 (1998); 
Miller
, 261 Ill. App. 3d at 879, 634 N.E.2d at 1113.  Accordingly, the alleged violations of these safety regulations and standards cannot create a duty, where we have already determined that Dae Julie did not owe Ross a duty of care by virtue of its lack of sufficient control over the operative details of the work of Hill Mechanical.  As a result, the trial court's grant of summary judgment was proper.

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.     

GREIMAN and KARNEZIS, J.J., concur.