JOHN L. MOSS, Independent Adm'r of the Estate of John E. Moss, Deceased, Plaintiff-Appellant, v. ROWE CONSTRUCTION COMPANY, a/k/a Cullinan and Son, Inc., Defendant-Appellee (Laesch Electric, Inc., Third-Party Defendant).

Fourth District   No. 4—03—0004

Opinion filed December 18, 2003.

COOK, J., specially concurring.

Larry E. Weisman (argued) and Kirsten M. Dunne, both of Goldberg, Weisman & Cairo, Ltd., of Chicago, for appellant.

Evan H. Johnson (argued) and Robert C. Bollinger, both of Erickson, Davis, Murphy, Johnson, Griffith & Walsh, Ltd., of Decatur, for appellee Rowe Construction Company.

Curt N. Rodin and Ehren V. Bilshausen, both of Anesi, Ozmon, Rodin, Novak & Kohen, Ltd., of Chicago, for *amicus curiae*.

JUSTICE MYERSCOUGH delivered the opinion of the court:

In December 2002, the trial court entered summary judgment for defendant on plaintiff's single-count complaint in negligence. Plaintiff appeals. We reverse and remand.

## I. BACKGROUND

On February 15, 1999, plaintiff's decedent, John E. Moss, was

killed while working as an employee for subcontractor Laesch Electric, Inc. (Laesch). Laesch was under contract to Rowe Construction Company (Rowe) to remove traffic control devices and foundations and install new ones as part of Rowe's contract with the State of Illinois, Department of Transportation (IDOT) for improvements to Veterans Parkway in Normal.

Under the general contract between IDOT and Rowe, Rowe was required to maintain control of safety on the project:

"Article VIII. Safety: Accident Prevention:

1. In the performance of this contract the contractor shall comply with all applicable [f]ederal, [s]tate, and local laws governing safety, health, and sanitation (23 CFR [§ ]635). The contractor shall provide all safeguards, safety devices[,] and protective equipment and take any other needed actions as it determines, or as the SHA [State Highway Agency] contracting officer may determine to be reasonably necessary to protect the life and health of employees on the job and the safety of the public and to protect property in connection with the performance of the work covered by the contract.

2. It is a condition of this contract, and shall be made a condition of each subcontract, which the contractor enters into pursuant to this contract, that the contractor and any subcontractor shall not permit any employee, in performance of the contract, to work in surroundings or under conditions which are unsanitary, hazardous[,] or dangerous to his/her health or safety, as determined under construction safety and health standards (29 CFR [§ ]1926) promulgated by the Secretary of Labor, in accordance with [s]ection 107 of the Contract Work Hours and Safety Standards Act (40 U.S.C. [§ ]333)."

Further, the general contract required:

"The contractor shall furnish (a) a competent superintendent or supervisor who is employed by the firm, has full authority to direct performance of the work in accordance with the contract requirements, and is in charge of all construction operations (regardless of who performs the work) ***."

Additionally:

"No portion of the contract shall be sublet, assigned[,] or otherwise disposed of except with the written consent of the SHA contracting officer, or authorized representative, and such consent when given shall not be construed to relieve the contractor of any responsibility for the fulfillment of the contract."

These elements of the general contract are incorporated in their entirety, including the IDOT standard specifications, into the subcontract between Rowe and Laesch.

The subcontract additionally stated in article XVI:

"The [s]ubcontractor shall follow the [c]ontractor's directions regarding safety, clean-up[,] and storage of materials on the work site."

The death of Moss occurred on February 15, 1999, at the intersection of Veterans Parkway and Fort Jesse Road. Al Ruhrup, Jr., Rowe's superintendent for the project, who was on the site on a daily basis, was not present at the time of the accident.

Decedent Moss, Michael Laesch (vice-president of the subcontractor), and two other Laesch employees were removing 7,000-pound concrete foundations upon which traffic control devices are installed. Laesch was operating a truck-mounted derrick, another employee was operating a dump truck to receive the concrete, Moss and the fourth employee were the "ground men" designated to steady the load as it was lifted by the truck-mounted derrick and guide it into the dump truck. Rather than using "tag lines" to guide the concrete, at the direction of Laesch, Moss and the other man were standing next to the foundation guiding it with their hands due to the tight circumstances caused by an adjacent light pole and guy wires. Those obstructions prevented Michael Laesch from placing the dump truck closer to the concrete foundation. Contractual terms prohibited Laesch from placing its equipment on the roadway during certain times of day, limiting placement options. Additionally, the ground upon which the derrick was placed was muddy, one of the outrigger supports for the truck-mounted derrick was not properly padded for the muddy conditions, and the derrick was improperly placed on a downward five-degree slope.

On the first attempted lift, the concrete began to spin and had to be set down. The second attempt was halted when the hydraulic overload protective system (HOPS) activated. HOPS is a warning system on the truck-mounted derrick indicating that something was not proper in the lift attempt. As a result, the dump truck was repositioned. On the third attempt, the derrick began to tip, and Laesch yelled for everyone to clear the area. Moss backed away into several guy wires. As he moved again, he was struck by the boom of the derrick and killed. Moss's estate sued defendant Rowe, the general contractor for the Veterans Parkway project (Project), alleging defendant retained control of the work and was negligent, causing Moss's death.

Rowe moved for summary judgment on the basis that Rowe did not retain or exercise control over the work being done by Laesch sufficient to impose liability on Rowe. The trial court granted the motion and entered judgment for Rowe and against Moss on plaintiff's complaint. Plaintiff appeals, framing the issues as follows:

"(1) Whether the Restatement (Second) of Torts, Section 414 ('Section 414'), requires a defendant to have *actually exercised control* over the 'means and methods' of a subcontractor's work to be subject to liability to a subcontractor's injured employee, or whether the *retention of a right to control* safety is sufficient to create at least a question of fact as to liability; and (2) Whether [d]efendant in the present case exercised and/or retained the right to exercise control over the work in a manner sufficient for it to be subject to liability pursuant to [s]ection 414." (Emphasis in original.)

This appeal followed.

## II. ANALYSIS

The issue before the court is more specifically framed under section 414 of the Restatement (Restatement (Second) of Torts § 414 (1965)): Did defendant retain some degree of duty to control safety on the project? Further, if defendant did retain that duty to control safety, did defendant negligently exercise or fail to exercise that duty to control safety? In this case, the retention of the duty to control safety is answered directly by the contracts. Further, the exercise of that duty or the failure to exercise that duty presents a genuine issue of material fact. We, therefore, reverse summary judgment and remand to the trial court for further proceedings.

### A. Standard of Review

■ The standard of review of a trial court's grant of a motion for summary judgment is *de novo*. Summary judgment is inappropriate if a material question of fact exists. All evidence is viewed in the light most favorable to the nonmovant. *Yacko v. Curtis*, 339 Ill. App. 3d 299, 301-02, 789 N.E.2d 1274, 1276 (2003).

"Summary judgment is a drastic remedy that should be granted only where the movant's right to it is clear and free of doubt. [Citation.] If the facts in the record present more than one conclusion or inference, including one unfavorable to the movant, summary judgment should be denied." *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 357, 726 N.E.2d 1171, 1176 (2000).

### B. Erroneous Analytical Approach: The Issue Is Who Has the Duty To Control for Safety

In granting summary judgment in the present case, the trial court reasoned as follows:

" '[R]etain control' means the contractual language and/or practices of the contractor/sub[ ]contractor must demonstrate control by the general contractor over the means and methods of

performance by the sub[ ]contractor of the job which leads to the injury. Here the contractual language does not specifically address supervision of the means or methods of the sub[ ]contractors removing concrete structures; the work that led to the death of plaintiff decedent."

However, this is not the appropriate question. The issue is not control of the "means and methods" of performing the task, but rather who contractually and/or physically has the duty to control safety of the project. First, the contractual language must be reviewed to determine what terms address the duty to control for safety. The facts must then be reviewed to determine whether the duty was physically fulfilled under the contract.

At the time of making the contracts, all parties have the opportunity to determine what liability each is willing and able to assume. In this case, Rowe entered into contracts with IDOT and then with Laesch where Rowe agreed to accept the duty to control safety on the project. In *Shaughnessy v. Skender Construction Co.*, 342 Ill. App. 3d 730, 794 N.E.2d 937 (2003), the court disregarded contractual language requiring the general contractor to be "responsible for initiating, maintaining[,] and supervising all safety precautions and programs in connection with the performance of the contract and to employ a superintendent whose duties included the prevention of accidents." *Shaughnessy*, 342 Ill. App. 3d at 732-33, 794 N.E.2d at 938. We cannot ignore the contract. To do so, here, would make the contractual obligations for safety a meaningless nullity, especially in light of the deposition testimony here.

The trial court granted summary judgment, finding that defendant did not control the "means and methods" of the subcontractor's work. However, when viewed, as we must, in the light most favorable to the plaintiff and when section 414(c) is viewed with full consideration of the contractual obligations and the duties thereunder, it is not a question of "means and methods." Rather, defendant's contracts establish a duty to control safety and raise a genuine issue of material fact as to whether defendant negligently exercised or failed to exercise that duty.

## C. The Law of Restatement (Second) of Torts, Section 414 and Comment c

■ Since the abolition of the Structural Work Act (Act) (740 ILCS 150/1 through 9 (West 1994) (repealed in Pub. Act 89—2, § 5, eff. February 14, 1995)), section 414 of the Restatement (Second) of Torts has controlled questions of liability in construction-related injury cases. Section 414 states:

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for

physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts § 414, at 387 (1965).

Additionally, comment *c* to section 414, states:

"In order for the rule stated in this [s]ection to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." Restatement (Second) of Torts § 414, Comment *c*, at 388 (1965).

The repealed Act was, in application, virtually a strict-liability statute founded upon the broad concept of "in-charge-of" analysis. The brief *amicus curiae* of the Illinois Trial Lawyers Association (Trial Lawyers) argues that section 414 analysis is analogous to the Act. However, we do not agree that section 414 establishes the broad liability that existed under the Act. On the facts in this case, section 414 applies to this case as the control required under section 414 is established by the terms of the contract.

### D. The Contract Between Defendant and Plaintiff's Employer Governs the Duty of Control of Safety Retained by Defendant

In *Larson v. Commonwealth Edison Co.*, 33 Ill. 2d 316, 325, 211 N.E.2d 247, 253 (1965), the supreme court noted that the purpose of the Act was to "broaden the common-law duty and to give added protection." A broad duty does not exist under section 414, but, just as in *Larson*, analysis of a claim based upon section 414 begins with review of the contracts establishing the relationship between the various entities involved in the project.

Defendant mistakenly interprets our opinion in *Rogers v. West Construction Co.*, 252 Ill. App. 3d 103, 623 N.E.2d 799 (1993), to stand for the proposition that contractual terms are irrelevant in a claim based upon section 414. In *Rogers*, which was decided prior to the repeal of the Act, the plaintiff was an employee of a subcontractor who was injured unloading steel beams to be used in ultrahazardous bridge repair work. The appellate court upheld the trial court's grant of summary judgment for the defendant. The trial court found that safety practices within the bridge-building industry required everyone but

the pile-driving subcontractor to vacate the work site when the general contractor notifies the subcontractor to begin pile-driving work. The trial and appellate courts quoted and relied upon an affidavit from the defendant's job superintendent, who stated that the subcontractor had "unrestricted control" over all aspects of the pile-driving activity and that his supervision was limited to visiting the site once or twice a day to check on progress. No evidence showed any other involvement by the defendant in the physical activities of the site.

Equally important, the facts never discuss the terms of the contract. No evidence showed the terms of any contract with the defendant. Rather, the plaintiff attempted to make a contractual argument based upon "IDOT's Standard Specifications for Road and Bridge Construction" without connecting that document to the terms of an actual contract in the case. *Rogers,* 252 Ill. App. 2d at 109-10, 623 N.E.2d at 251.

However, reliance upon *Rogers* is misplaced because the analysis in *Rogers* is superseded by the repeal of the Act. Under the Act, analysis was based on a broad definition of "having charge of," which required an intense review of the facts of each case. *Larson,* 33 Ill. 2d at 321, 211 N.E.2d at 251; *Hausam v. Victor Gruen & Associates,* 86 Ill. App. 3d 1145, 408 N.E.2d 1051 (1980). While, under the Act's broad liability, a showing of "having charge of" resulted in nearly strict liability, such is not the case under section 414.

Review of section 414, postrepeal of the Act, requires review of the legal establishment of the duty, not just the physical facts that may be the manifestation of the duty. The best recent example of this is in *Bokodi v. Foster Wheeler Robbins, Inc.,* 312 Ill. App. 3d 1051, 728 N.E.2d 726 (2000), where the appellate court reversed a grant of summary judgment based upon the contracts. The court first looked to the contract between the builder and the general contractor and between the general contractor and the subcontractor. The court noted that the general contractor was responsible for the construction schedule and subcontractor coordination. Further, the facts showed a substantial level of involvement by the general contractor in the incidental activities of the work site, including a specific safety program and a designated individual whose sole function was investigation for safety hazards. *Bokodi,* 312 Ill. App. 3d at 1062, 728 N.E.2d at 734-35.

Moreover, when viewed in the context of *Bokodi* and the facts in this case, the *Rogers* case is distinguishable and inapplicable. First, where *Rogers* did not explore the terms of the actual contract, the facts here specifically mandate safety control by the terms of the contract between IDOT and Rowe, which incorporates specifications. Further, that general contract is a part of the subcontract with Laesch. Second,

the issue is one of creation of a duty for determining tort liability. In this case, the standard specifications were specifically incorporated in the general contract and in the subcontract.

■ Regardless of whether language of a contract originates from governmental regulations or is specifically written for an individualized transaction, it may create a duty that is owed to a third party. Restatement (Second) of Contracts § 304, Comment *b*, at 448 (1981). Such is the intent of the contract in this case. The facts demonstrate that defendant contractually agreed to assume the duty to control the safety of the workers on the project in the contract between defendant and IDOT. The terms of that agreement were incorporated in the subcontract, which further obligated the subcontractor to abide by those terms.

Equally important, the project is one originated and funded by the State of Illinois. As a matter of pubic policy, the State may choose to include various terms establishing duties upon contractors as conditions for doing business with the state that may not be included contracts between private entities in private business. Even had Rowe wished to delegate or disclaim its duty for safety under the IDOT contract, Rowe did not have that choice if it wished to do business with the State of Illinois.

The depositions of Michael Laesch, vice-president of subcontractor Laesch; Al Ruhrup, Jr., site superintendent for defendant Rowe; Kenneth Wagoner, from IDOT; and James Threadgill, from IDOT, all contain testimony indicating that Ruhrup and Rowe had the authority to stop or correct any safety violations in the work of the subcontractor in performance of the project. Michael Laesch testified in his deposition:

"Q. Had Mr. Ruhrup given you some direction that related to safety, given the way this job was contracted for or set up, would you have had to follow that directive?

A. We would have followed that directive."

Al Ruhrup, Jr., testified as follows in his deposition:

"Q. Okay. Now, if you had observe[d] a raising operation of one of these concrete foundations on the Veterans Parkway project and there were construction workers or a construction worker positioned on the ground not in the [']clear zone,['] as you called it, during the course of one of these picks, would you have a level of authority to stop the operation and see to it that that man is moved out of the way of the load?

A. I would say, yes, I would have the authority to."

James Threadgill, an IDOT engineer associated with the project in this case, testified as follows in his deposition:

"Q. And if Rowe, as the contractor, feels that either the equipment selected or the method selected by its subcontractor is unsafe, then Rowe has the right to stop that work; correct?

A. Yes."

Ruhrup and Rowe had the authority and duty under the contract to stop work and correct any unsafe condition or OSHA violation. IDOT clearly places upon the general contractor the duty and authority to control safety under IDOT contracts, whether the work is performed by the contractor or a subcontractor.

## E. Cases Interpreting Section 414 and Comment *c* Since Repeal of the Act Have Not Involved Clear Contractual Terms

The cases that have interpreted section 414 and comment *c* since the repeal of the Act have, generally, looked to the physical exercise of control of the means of performing work to determine whether a duty existed on the part of the defendant akin to the way one analyzed an Act claim to determine whether a defendant had "charge of" the workplace. These recent cases have not included contractual terms such as those in this case.

In *Connaghan v. Caplice*, 325 Ill. App. 3d 245, 757 N.E.2d 971 (2001), a homeowner who provided the ladder that collapsed causing injury did not retain or exercise sufficient control over the incidental aspects of the independent contractor performing carpentry to defeat the defendant's motion for summary judgment as a matter of law.

In *Bieruta v. Klein Creek Corp.*, 331 Ill. App. 3d 269, 770 N.E.2d 1175 (2002), the plaintiff was injured by a fall in a trench on the defendant's land. The defendant was also the general contractor for construction on the land. The plaintiff was the subcontractor's employee and was excavating with a backhoe on the premises. On the question of liability for the injury to the subcontractor's employee, the appellate court affirmed summary judgment for the general contractor, noting that there was no contract between the general contractor and the subcontractor and no other evidence of any control or direction by the general contractor of "operative details" of the subcontractor's work. *Bieruta*, 331 Ill. App. 3d at 276, 770 N.E.2d at 1181.

In *Ross v. Dae Julie, Inc.*, 341 Ill. App. 3d 1065, 1074, 793 N.E.2d 68, 75 (2003), no evidence was presented and no contract established that the defendant retained control. The appellate court concluded that the defendant never directed the "operative details" of the work performed, and the facts established that the defendant relied upon the plaintiff's employer to be responsible for safety.

The standard under which section 414 cases are to be reviewed since the repeal of the Act has been somewhat confused. For example,

the trial judge in this case, during argument on summary judgment, questioned the case law:

"[I]t looks to me like the Fourth District is kind of on the road of what did you actually do, not what could you have done if you would have wanted to, but what did you actually do on this project[;] *** if that's the rule, then why would anybody want to do anything? I mean, you've got a contract and other than just the humanitarian, you know, the goodness of your heart, you don't want to see somebody get hurt, but I mean if that's the rule then I guess the incentive to take corrective action that you have the right to do seems to me to be not very *** good because the more *** you do the more liable you're going to be, and the less you do the less liable you're going to be[;] *** to me that looks like the analysis they're following here."

Cases where the contract has contained only general statements on the right to control the job have led to this illogical conclusion identified by the trial judge. A general right to stop and start work has been found insufficient to impose liability. In *Shaughnessy*, 342 Ill. App. 3d at 732, 794 N.E.2d at 938, the appellate court declined to assess liability by affirming summary judgment despite contractual terms in the contract requiring the general contractor to be responsible for safety precautions and programs and to employ a safety superintendent responsible for prevention of accidents and evidence demonstrating that the defendant failed to do so. While the opinion does not quote the language from the actual contract, the facts state that the contract between the racquet club, which hired the work to be done on its premises, and the general contractor was a "standard form agreement approved by the Associated General Contractors of America." *Shaughnessy*, 342 Ill. App. 3d at 732, 794 N.E.2d at 938. The court concluded that plaintiff failed to raise a fact question about whether the general contractor exerted sufficient control over the plaintiff. *Shaughnessy*, 342 Ill. App. 3d at 740, 794 N.E.2d at 944. Further, the court dismissed the argument over the contractual relationship by pointing to deposition testimony indicating that the excerpts of the contract cited only established a general right to stop, start, and inspect the progress of the work. *Shaughnessy*, 342 Ill. App. 3d at 738, 794 N.E.2d at 943.

Similarly, in *Rangel v. Brookhaven Constructors, Inc.*, 307 Ill. App. 3d 835, 719 N.E.2d 174 (1999), only a general contractual term was quoted: " 'The General Contractor shall have the right to exercise complete supervision and control over the work to be done by the Subcontractor, but such supervision and control shall not in any way limit the obligations of the Subcontractor.' " *Rangel*, 307 Ill. App. 3d

at 838, 719 N.E.2d at 177. However, this language is not comparable to the specific mandate for safety contained in the contracts in this case.

In *Hutchcraft*, this court, while reversing summary judgment in favor of two subcontractors, granted summary judgment to the owner of the construction site in a suit brought by an employee of the general contractor. The plaintiff alleged that the construction site's owner's general duty of control satisfied the retained-control element of section 414. The opinion includes no discussion of the terms of any contract between the various defendants. Rather, the opinion was decided purely upon the factual question of whether the owner had actually exercised any physical control over the welding machines that caused the injury. This court concluded that the general authority of a site owner did not impose a duty to retain control of the work for safety as it related to the subcontractors' welding activities for purposes of section 414. *Hutchcraft*, 312 Ill. App. 3d at 359, 726 N.E.2d at 1178.

To the contrary, however, *Bokodi*, 312 Ill. App. 3d 1051, 728 N.E.2d 726, issued the same day as *Hutchcraft*, reversed a grant of summary judgment based upon the specific safety duties set forth in the contract. The court's attention to the contractual terms as the foundation of section 414 liability presents a break from the analytical framework for cases under the Act. See *Bokodi*, 312 Ill. App. 3d at 1063, 728 N.E.2d at 735.

■ Here, as noted in the facts, defendant accepts the duty to control safety by specific contract language: governing safety; provide all safeguards, safety devices, and protective equipment; take any other needed actions as it determines reasonably necessary to protect the life and health of employees; condition of this contract; condition of each subcontract; shall not permit any employee to work in surroundings or under conditions that are hazardous or dangerous to his health or safety. In the face of this contractual duty to control safety, the trial court erred in considering only whether the general contractor retained control over the means and methods over the performance of the job of removing the concrete structures and not this contractual language. The law requires the trial court to review the contractual language regarding the general contractor's duty to maintain safety of workers.

F. Illinois Pattern Jury Instructions, Civil, No. 55.02 (Supp. 2003) Is Not Necessary To Decide This Case

■ *Amicus* Trial Lawyers point out that following the repeal of the Act, the Illinois Supreme Court adopted Illinois Pattern Jury Instruc-

tions, Civil, No. 55.02 (Supp. 2003) (hereinafter IPI Civil (Supp. 2003) No. 55.02), for use in cases alleging contractor responsibility for negligence under section 414:

"A party who retained some control over the safety of the work has a duty to exercise that control with ordinary care."

The IPI Committee recognizes the difficult concept of control in the introduction to IPI Civil (Supp. 2003) No. 55.00:

"Due to the lack of consensus among the appellate courts and no [s]upreme [c]ourt cases on this subject since *Larson* in 1965, the concept of 'control' caused the committee great difficulty. The committee chose to concentrate on the area of 'safety' in these instructions. The committee believed that the overriding consideration throughout all of these cases is the ability of the controlling entity to affect overall job safety. It would appear that the ability to stop unsafe work and not permit it to be resumed until done to the satisfaction of the controlling entity satisfies both the requirement of 'control' and demonstrates that the contractor is 'not entirely free to do the work in his own way.' " IPI Civil (Supp. 2003) No. 55.00, Introduction, at 16.

Given the difficulty with this concept of control, we rely in this case upon the language of the contract where defendant agreed to take responsibility for control of safety.

## III. CONCLUSION

Because genuine issues of material fact remain as to whether the contract placed a duty to control safety on defendant and whether defendant physically exercised or failed to exercise that duty, we reverse the finding of summary judgment for defendant and remand.

Reversed and remanded.

McCULLOUGH, J., concurs.

JUSTICE COOK, specially concurring:

I question whether the introduction to IPI Civil (Supp. 2003) No. 55.02 accurately reflects the law. As I understand the introduction, the retention of the mere "ability to stop unsafe work and not permit it to be resumed until done to the satisfaction of the controlling entity" (IPI Civil (Supp. 2003) No. 55.00, Introduction, at 16) is sufficient for the imposition of a duty. Every owner, general contractor, and employer would appear to have that ability, and the introduction would apparently impose a duty in every case.

I believe comment *c* to section 414 is still persuasive. "Such a general right is usually reserved to employers, but it does not mean

that the contractor is controlled as to his methods of work, or as to operative detail." Restatement (Second) of Torts § 414, Comment *c*, at 388. Comment *c* would not equate that general right with "control" or to mean that the contractor is "not entirely free to do the work in his own way." I would not find a duty in every case, only when there is something more than the minimal relationship between the parties. I believe that is what IPI Civil (Supp. 2003) No. 55.02 means when it says that "[a] party who [has] retained some control over the safety of the work has a duty." IPI Civil (Supp. 2003) No. 55.02.