Kenneth R. SCHREIBER, Plaintiff–Appellant,

v.

IDEA ENGINEERING & FABRICATING, a corporation and Gallagher–Kaiser Corporation, a corporation, Defendants–Appellees.

No. 03–3649.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 13, 2004.

Decided Nov. 17, 2004.

Before BAUER, RIPPLE, and EVANS, Circuit Judges.

## ORDER

Kenneth Schreiber worked as a welder on a construction project expanding the Ford automotive plant in Chicago. After being injured at the jobsite, he filed this

diversity action against general contractor Gallagher–Kaiser Corp. ("Gallagher–Kaiser"), and against the company that controlled his work on the site, Idea Engineering & Fabricating ("Idea"). He asserted an Illinois state law negligence claim. The district court granted summary judgment for Gallagher–Kaiser and Idea on the ground that Mr. Schreiber had failed to establish a duty owed him by Gallagher–Kaiser and that his only relief against Idea was under the Illinois workers' compensation statute. Mr. Schreiber appeals, and for the following reasons we affirm the judgment of the district court.

# I

## BACKGROUND

### A. Facts

Mr. Schreiber, a citizen of Illinois, worked as a welder in a construction project at Ford's Chicago plant. He was employed and paid by Genesys, an employment company that furnished workers to other companies. At the jobsite, Mr. Schreiber actually worked for, and under the direction of Idea, a Michigan corporation and the subcontractor in charge of constructing a conveyor system. The conveyor project constituted a portion of a larger project under the overall direction of general contractor Gallagher–Kaiser, another Michigan corporation.

Mr. Schreiber suffered shoulder injuries when, while welding at a spot on the conveyor line, the conveyor chain pulled him into a guide wheel. The conveyor chain in this case is a linked belt of metal plates with hooks, designed to move car bodies in, out, and through a painting area. It is unclear whether Mr. Schreiber's injury occurred while a completed conveyor chain was being tested, or while workers were "pulling chain," moving the conveyor belt in ten-foot increments to attach successive conveyor chain links.

### B. District Court Proceedings

Alleging negligence, Mr. Schreiber sued Idea and Gallagher–Kaiser, among others, in Illinois state court. The defendants properly removed the case to federal district court. After discovery, Gallagher–Kaiser and Idea each moved for summary judgment. Gallagher–Kaiser asserted that Mr. Schreiber could offer no evidence that it owed a duty to him, and thus could not make out a claim for Illinois state law negligence. Idea claimed protection under the Illinois workers' compensation statute.

The district court applied Illinois state law and determined that Mr. Schreiber had failed to demonstrate that Gallagher–Kaiser retained control over Idea, and therefore could not prove that Gallagher–Kaiser owed a duty to him. The court therefore granted Gallagher–Kaiser's motion for summary judgment. Ruling on Idea's motion, the court also determined that Mr. Schreiber was a borrowed employee under the Illinois workers' compensation statute, and that his sole remedy against Idea was available under that statutory scheme. The district court therefore granted Idea's motion for summary judgment. Mr. Schreiber now appeals both grants of summary judgment.

# II

## DISCUSSION

We review a district court's grant of summary judgment de novo, *Lamers Dairy Inc. v. United States Dep't of Agric.*, 379 F.3d 466, 472 (7th Cir.2004), drawing all inferences in the light most favorable to the nonmoving party, here Mr. Schreiber, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate

when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Where, as here, a federal court sitting in diversity is called upon to decide an unsettled question of state law, we are obligated to determine how the Supreme Court of Illinois would rule. *Hinc v. Lime–O–Sol Co.*, 382 F.3d 716, 720 (7th Cir.2004). We review de novo the district court's determination of the content of Illinois state law. *Id.* (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991)).

## A. Negligence Action Against Gallagher–Kaiser

In granting summary judgment for Gallagher–Kaiser, the district court determined that, as a matter of Illinois law, Gallagher–Kaiser owed no duty to Mr. Schreiber and therefore that he could not make out a claim for negligence. Mr. Schreiber now submits that the district court applied the wrong standard in its analysis and that there are triable issues of material fact concerning Gallagher–Kaiser's control over the project and the duty it owed to him.

Generally, a project's general contractor like Gallagher–Kaiser is not liable for the acts or omissions of an employed independent contractor, here Idea. *Gomien v. Wear–Ever Aluminum, Inc.*, 50 Ill.2d 19, 276 N.E.2d 336 (1971). Therefore, Mr. Schreiber, who was employed by Genesys and directed by Idea, would ordinarily be precluded from asserting a negligence claim against Gallagher–Kaiser, the general contractor on his jobsite. There are exceptions to this principle, however. For much of the last century, the exceptions were governed by Illinois' Structural Work Act, 740 Ill. Comp. Stat. 150/0.01 et seq. (West 1994), which established a liberal test for determining a contractor's control

over the project; if a plaintiff could demonstrate that the contractor exercised sufficient control, then he met his burden on the duty issue to survive summary judgment. When the Structural Work Act did not govern a situation, the Supreme Court of Illinois recognized that section 414 of the Restatement (Second) of Torts ("section 414") was the state's law. *Larson v. Commonwealth Edison Co.*, 33 Ill.2d 316, 211 N.E.2d 247 (1965).

The parties agree that, with the repeal of the Structural Work Act, exceptions to the principal of general contractor non-liability are governed by section 414 alone, which the Supreme Court of Illinois last considered as an expression of state law in *Larson. See Bokodi v. Foster Wheeler Robbins, Inc.*, 312 Ill.App.3d 1051, 245 Ill. Dec. 644, 728 N.E.2d 726, 731 (2000). Under section 414, "[o]ne who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts § 414 (1965). The general contractor's liability is therefore dependent upon the amount of control that it retains over the work of the independent contractor. Consequently, control is the operative inquiry.

The comments to section 414 assist in determining whether the control retained by a general contractor is sufficient for liability. Comment (a) notes that the control inquiry is not coextensive with agency principles:

The employer may, however, retain a control less than that which is necessary to subject him to liability as master. *He may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner*

*likely to be dangerous to himself or others.*

*Id.* § 414 cmt. a (emphasis added). The section 414 exception to non-liability is also operable when

a principal contractor entrusts a part of the work to subcontractors, *but himself or through a foreman superintends the entire job.* In such a situation, the principal contractor is subject to liability if he fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others, if he knows or by the exercise of reasonable care should know that the subcontractors' work is being so done, and has the opportunity to prevent it by exercising the power of control which he has retained in himself.

*Id.* § 414 cmt. b (emphasis added). Most importantly, the application of section 414 is limited by comment (c):

In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. *It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.* Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. *There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.*

*Id.* § 414 cmt. c (emphasis added).

We recognize that Illinois appellate courts have taken varied approaches to determining whether a general contractor has retained sufficient control to be held liable for injury to an independent contractor's employee. One approach, adopted by the district court in Mr. Schreiber's case, adopts a relatively strict methodology based on the language in comments (a) and (b). Under this approach, a general contractor cannot be liable so long as the independent contractors are responsible for their own means, methods and techniques in completing the work. The general contractor cannot be liable if he does not control the incidental aspects of the independent contractor's job. *See Ross v. Dae Julie, Inc.,* 341 Ill.App.3d 1065, 275 Ill.Dec. 588, 793 N.E.2d 68, 73–74 (2003); *Fris v. Pers. Prods. Co.,* 255 Ill.App.3d 916, 194 Ill.Dec. 623, 627 N.E.2d 1265, 1270 (1994).

Mr. Schreiber asserts, however, that the correct approach is to hold a general contractor liable if it retains supervisory control over the work and especially over worksite safety. *Moss v. Rowe Const. Co.,* 344 Ill.App.3d 772, 279 Ill.Dec. 938, 801 N.E.2d 612, 615 (2003). *Moss* also put great stock in the language of the general contract, holding that specific safety requirements required by the project owner in its contract with the general contractor alone raised an issue of material fact, *id.* at 616, a position that Mr. Schreiber believes also controls in this case. The importance placed on retained control through contract language by the *Moss* court, rather than on indicia of control such as supervisory authority or the authority to stop work for safety violations, has been the subject of live debate among state appellate courts. *Compare Shaughnessy v. Skender Const. Co.,* 342 Ill.App.3d 730, 276 Ill.Dec. 687, 794 N.E.2d 937 (2003) (analyzing actual indicia of control with less emphasis on contract language), *with Moss,* 279 Ill.Dec. 938, 801 N.E.2d at 615 (relying exclusively on contract language and criticizing the *Shaughnessy* approach as mak-

ing "contractual obligations for safety a meaningless nullity"), *with Martens v. MCL Const. Corp.*, 347 Ill.App.3d 303, 282 Ill.Dec. 856, 807 N.E.2d 480, 490 (2004) (highlighting *Moss'* misconstruction of *Shaughnessy*, criticizing its reliance on contract language alone, and advocating a more balanced approach).

Finally, some Illinois cases indicate a less restrictive totality of the circumstances approach to determining liability, advocating an inquiry into the general contractor's control over the incidental aspects of work and the contract language. *See, e.g., Bokodi*, 245 Ill.Dec. 644, 728 N.E.2d at 733.

Although we note the uncertainty in the decisions of Illinois appellate courts, we do not believe that Mr. Schreiber met his burden of demonstrating retained control in any event. We first consider the matter on which state courts are in agreement: that evidence of actual control, that is, the general contractor's control over the means and methods of the independent contractor's work, is enough to survive summary judgment.

 The district court determined that Mr. Schreiber presented insufficient evidence to meet his burden. He nevertheless continues to assert that Gallagher–Kaiser exercised control apart from the enforcement of safety standards. Mr. Schreiber bases this assertion on Gallagher–Kaiser's daily inspections of subcontractor work, daily progress meetings with the subcontractors, and occasions when Gallagher–Kaiser instructed Idea on how work was to be performed. There is evi-

dence that Gallagher–Kaiser inspected Idea's conveyor project carefully, *see* R. 123, Ex.D at 13 (using a checklist before Gallagher–Kaiser could report completion to Ford), and corrected some quality-control deficiencies in the work, *see id.* at 12, 245 Ill.Dec. 644, 728 N.E.2d 726 (requiring re-welding "five or six times"). What appears from the record, however, is that Gallagher–Kaiser never instructed Idea or its employees how to perform their welding work and never told Idea how to "pull chain" on the conveyor. It also appears that Gallagher–Kaiser used a rigorous chain of command, rarely approaching individual employees and instead offering their concerns to subcontractor supervisors, who then fixed problems in their own way.[1] Idea provided its own materials and equipment. Mr. Schreiber received his daily orders (what to weld and how to weld) from Idea. The parties do not dispute that, when Mr. Schreiber was injured, Idea employees were operating the conveyor. Given the evidence, we cannot say that Gallagher–Kaiser retained control over the incidental aspects of Idea's work, and agree with the district court's determination.

While the district court relied on the *Fris* standard—a general contractor's control over the incidental aspects of the work—in determining that Mr. Schreiber failed to meet his burden, on appeal he continues to contend that Gallagher–Kaiser's control over the worksite safety program, particularly its authority to stop work in the event of a safety violation by one of its subcontractors, ought to be the focus of our inquiry. *See Bokodi*, 245 Ill.

---

1. It is important to note the process that Gallagher–Kaiser used when, according to Mr. Schreiber, it "controlled" Idea's work. The record indicates that, if Gallagher–Kaiser superintendents saw a safety or quality control problem, they reported it to the subcontractor's supervisor, and relied on the subcon-

tractor to fix the problem (e.g., determining how to re-weld to meet the quality standard, or how to accomplish the job while meeting the safety standard). This process demonstrates that Gallagher–Kaiser did not retain control over the project or over worksite safety.

Dec. 644, 728 N.E.2d at 734–35. He points out that the contract between Ford and Gallagher–Kaiser placed ultimate responsibility for the worksite safety program on the latter company, which further indicates control retained in accordance with section 414. *See Moss,* 279 Ill.Dec. 938, 801 N.E.2d at 615. We need not resolve the precise contours of the control inquiry under Illinois law because we find that Mr. Schreiber failed to meet his burden under any measure.[2]

With respect to the contract between Ford and Gallagher–Kaiser, the agreement required Gallgher–Kaiser to comply with federal and local safety laws, and vested responsibility for protecting personnel in the worksite with Gallagher–Kaiser. It required Gallagher–Kaiser to establish certain training programs, and made it Gallagher–Kaiser's responsibility to post warning signs to protect workers. In addition, Gallagher–Kaiser's contract with Ford required the general contractor to assume specific supervisory requirements in the overall jobsite safety program. Ford required Gallagher–Kaiser to appoint a Safety Coordinator, who "shall work *exclusively* on improving the safety and health of people involved ... on the jobsite." R. 123, Ex.B, Supp. CPE 1000–ESC (emphasis in original).

The contract between Gallagher–Kaiser and Idea requires Idea's compliance with certain safety requirements, including federal, state, and local requirements, and incorporates the Gallagher–Kaiser corporate subcontractor safety standards. These standards required Idea to comply generally with federal safety and reporting standards, submit accident reports to the general contractor, train employees in safety in accordance with Gallagher–Kaiser requirements, conduct safety meetings and attend Gallagher–Kaiser safety meetings, meet specific fire plan requirements, implement inspection programs and submit to Gallagher–Kaiser's inspections, and implement certain programs "as deemed necessary" by Gallagher–Kaiser. Despite these supervisory provisions, the contract between the two companies emphasized that Idea retained responsibility for its own safe work practices, for complying with reporting requirements, and for its own training programs.

Some of this language is similar to the contractual language at issue in *Moss,* but there are significant differences. For example, Ford's contract with Gallagher–Kaiser granted the latter less explicit responsibility for the work than the contracts in *Moss.* The *Moss* contract required agreements with subcontractors to include provisions prohibiting subcontracted employees from working in dangerous conditions, a specific requirement that is lacking here. Significantly, the contract between Gallagher–Kaiser and Idea explicitly places responsibility for the safety and management of its employees solely with Idea. *See Bokodi,* 245 Ill.Dec. 644, 728 N.E.2d at 734 (pointing out the role that a comparable provision played in finding no liability in *Fris* ); *see also Rangel v. Brookhaven Constructors, Inc.,* 307 Ill. App.3d 835, 241 Ill.Dec. 313, 719 N.E.2d 174, 177 (1999). Thus, we cannot conclude that the contracts involved in this case alone constituted control retained by Gallagher–Kaiser sufficient for it to be held liable for Mr. Schreiber's injury.

In addition to the contractual provisions, Mr. Schreiber offered evidence that Galla-

**2.** While not dispositive to this case, we note that the *Moss* court's emphasis on contract language alone appears to be the minority position in states interpreting section 414, with only Arizona following a similar path. *See Lewis v. N.J. Riebe Enters., Inc.,* 170 Ariz. 384, 825 P.2d 5, 12 (1992).

gher–Kaiser maintained active control over worksite safety. As noted earlier, the Ford/Gallagher–Kaiser contract required Gallagher–Kaiser to appoint a dedicated safety coordinator. The presence of an exclusive safety coordinator has been an important factor in Illinois courts' determinations of control, *see Bokodi,* 245 Ill.Dec. 644, 728 N.E.2d at 734–35, but there is no evidence that Gallagher–Kaiser actually appointed a person whose exclusive job was to supervise safety. The record indicates that the company gave one superintendent the additional duty of being the "site safety person" but he remained primarily a line supervisor. R.123, Ex.C at 21. Apart from the evidence that Gallagher–Kaiser had one non-exclusive safety supervisor, Mr. Schreiber offered other evidence purporting to demonstrate the general contractor's actual control over jobsite safety. For instance, the Gallagher–Kaiser safety supervisor conducted safety coordination meetings and jobsite safety inspections. In his contention that Gallagher–Kaiser's "construction team members agreed and admitted that they had the responsibility, authority, and competence to enforce worksite safety," Appellant Br. at 18, however, Mr. Schreiber exaggerates the level of control that this evidence demonstrates. Gallagher–Kaiser supervisors did not have the authority to correct subcontractor employers, even for safety violations, and the safety supervisor did not regularly talk to subcontractor foremen in his safety walk-arounds. Additionally, there is no evidence that Gallagher–Kaiser knew of any unsafe condition or operation of Idea. *See Bokodi,* 245 Ill. Dec. 644, 728 N.E.2d at 735 (citing *Rangel,* 307 Ill.App.3d 835, 241 Ill.Dec. 313, 719 N.E.2d 174). Indeed, a determination that Gallagher–Kaiser exercised control sufficient to generate liability would be "[p]enalizing a general contractor's efforts to promote safety and coordinate a general safety program among various independent contractors at a large jobsite[, which would] hardly serve[ ] to advance the goal of work site safety." *Martens,* 282 Ill.Dec. 856, 807 N.E.2d at 492.

Given the contracts between Gallagher–Kaiser, Ford, and Idea, and the minimal level of control Gallagher–Kaiser retained over Idea's work and its safety program, we cannot say that Mr. Schreiber met his burden of establishing control retained sufficient to defeat the presumption of Gallagher–Kaiser's non-liability. The district court properly granted Gallagher–Kaiser's motion for summary judgment.

B. Employment Status with Idea

The district court granted Idea's motion for summary judgment on the ground that Mr. Schreiber was a borrowed employee under the Illinois workers' compensation act, and the act therefore constituted his sole remedy against Idea. Mr. Schreiber rejects his characterization as a borrowed employee, asserting that he did not consent to a borrowed relationship.

Whether an employee is "borrowed" is a question of fact. Illinois looks to several factors in determining whether a borrowed relationship exists, *O'Loughlin v. ServiceMaster Co. LP,* 216 Ill.App.3d 27, 159 Ill. Dec. 527, 576 N.E.2d 196 (1991), but the factors have been accepted as a two-part test: (1) whether the employer had the right to direct and control the employee, and (2) whether there was an express or implied contract of hire between the two. *A.J. Johnson Paving Co. v. Indus. Comm'n,* 82 Ill.2d 341, 45 Ill.Dec. 126, 412 N.E.2d 477 (1980); *see Barraza v. Tootsie Roll Indus., Inc.,* 294 Ill.App.3d 539, 228 Ill.Dec. 853, 690 N.E.2d 612, 615 (1997).

The first element of the borrowed employee test is not in dispute here; Idea unquestionably controlled Mr. Schreiber's work. In determining the second element, whether an employee explicitly or impliedly consented to work for the borrowing

employer is "a threshold inquiry for the court." *Barraza*, 228 Ill.Dec. 853, 690 N.E.2d at 616 (citing *Crespo v. Weber Stephen Prods. Co.*, 275 Ill.App.3d 638, 212 Ill.Dec. 1, 656 N.E.2d 154 (1995)). However, this consent can be implied when the first employer's business—here, Genesys—involves furnishing employees to other employers. *Id.* "[A]n employee impliedly consents to a borrowed employment situation by agreeing to work for an employment agency or service." *Id.* (citing inter alia *Evans v. Abbott Prods., Inc.*, 150 Ill.App.3d 845, 104 Ill.Dec. 78, 502 N.E.2d 341 (1986)).

Mr. Schreiber admitted in his response to Idea's statement of facts that he knew that he was employed by Genesys, but that he worked for Idea. Under these circumstances, his consent to employment by Idea may be presumed. The district court correctly determined that his only remedy against Idea lies under Illinois' workers' compensation scheme. Accordingly, we affirm the district court's grant of summary judgment.

C. Sanctions

Idea requests that this court sanction Mr. Schreiber for bringing a frivolous appeal in his claim against them on the ground that he does not argue district court error. In Idea's view, his argument is a request that this court change Illinois law. In determining whether to sanction under Rule 38, this court first considers whether the appeal is frivolous, and if so whether sanctions are warranted. *Williams v. Seniff*, 342 F.3d 774, 794 (7th Cir.2003).

 The appeal is frivolous if Mr. Schreiber's argument is "utterly meritless and [has] no conceivable chance of success," *In re Gulevsky*, 362 F.3d 961, 964 (7th Cir.2004), that is, if the result is foreordained. Our review of Illinois law concerning borrowed employees makes clear

that we cannot characterize Mr. Schreiber's case in such stark terms. Mr. Schreiber essentially asserted error in the district court's application of the prevailing test. There was no misrepresentation of controlling law, but merely a dispute about its application. Mr. Schreiber's argument is "not so foreclosed by precedent that it warrants sanctions." *Id.*

Moreover, sanctions are particularly inappropriate because there is no evidence that Mr. Schreiber pursued this appeal in bad faith or out of sheer obstinacy. *See, e.g., United States v. Ins. Consultants of Knox, Inc.*, 187 F.3d 755, 761 (7th Cir. 1999).

Conclusion

For the foregoing reasons, the district court's grant of summary judgment to Gallagher–Kaiser and Idea is affirmed.

AFFIRMED